## MENDENHALL v. HALL.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF LOUISIANA.

No. 158. Submitted by appellant, December 13, 1889; by appellee, March 24, 1890. — Decided April 7, 1890.

When one of two defendants in a suit in equity demurs to the bill and the demurrer is sustained, and the other defendant answers, and the bill is then dismissed, and the plaintiff appeals, and files an appeal-bond running to " the defendants," and the appeal is duly entered here within the prescribed time, this court has jurisdiction of the appeal; and, if the defendant as to whom the bill was dismissed on demurrer does not appear, he may be cited in, and the court may then proceed to hear and determine the cause.

When a mortgagee of real estate asserts in equity his rights as against a tax-sale of the estate, alleged by him to have been made collusively in conjunction with the mortgagor for the purpose of getting rid of the mortgage for the benefit of the mortgagor, he may either proceed against the purchaser alone, or against the purchaser and the mortgagor: and in any event it is not necessary for him to make tender of the payment of the amount of the tax for which the estate was sold.

The provision in the constitution of Louisiana declaring a tax-title to be *prima facie* valid is intended to be applied to cases in which the tax-title is attacked for alleged informalities in the proceedings; but not to cases in which it is attacked for fraud and collusion in effecting the sale.

*Austin* v. *Citizens' Bank*, 30 La. Ann. 689, approved and applied to this case.

In foreclosing a mortgage in Louisiana, the mortgagor is entitled, in making up the amount of the judgment, to be credited with judgments against the mortgagee in another State which have been acquired by the mortgagor.

By a deed executed December 24, 1875, John H. Mendenhall and wife, citizens of Ohio, conveyed to Clark N. Hall, a resi-

dent of Louisiana, an undivided one-fourth of certain lands in Carroll parish in that State, known as the Concord plantation. The price agreed to be paid was $5123, for which the vendee executed to the grantor his three promissory notes, the first one for $2000, payable January 1, 1877; the second for a like sum, payable January 1, 1878; and the third for $1123, payable January 1, 1879; each note bearing interest at the rate of eight per cent per annum from date until paid. In order to secure the payment of the principal and interest of those notes, the grantee, by the same instrument, mortgaged and hypothecated the property for the benefit of the vendor, or any future holder or holders of the notes, " binding and obligating himself not to sell, mortgage, or in anywise encumber said property to the prejudice of this act of mortgage."

The deed was duly filed for record in the proper office on the day of its date.

By an indenture executed February 10, 1876, the owners of the Concord plantation, William C. White, James Andrews and Clark N. Hall, made a partition thereof among themselves.

On the 5th of March, 1882 — no part of the principal sum having been paid and the interest only having been paid up to January 1, 1879 — Clark N. Hall wrote to Mendenhall, giving the reasons why he had not for some time made a payment. After stating that he and his brother had tried together to make arrangements to meet his notes and that they had been compelled, in order to run the plantation, to deposit what money they had as security for aid supplied by others, he said: " So we deposited the money we had and are goin ahead, and I can assure you it has given me a heap more pain than it has you; and one more thing I can assure you, I am going to attend strictly to byiness, and am going to get as little as possible, and work to best advantage, and I know this fall will be able to make you a payment that will satisfy you. My aim is to pay you the $2500 this fall without a doubt; with what I have left out of the place, and what Charley will be able to raise then, we can do it like a flash, and to do it now will be a stop to all things. '  .  .  So, under the cir

cumstances, I am not going to pay one dollar now, and if it don't suit you I cannot, for the life of me, help it. If you had rather resort to law, all right. If not, wait until fall with patience and I am sure everything will be made O. K. . . . Everybody predicts a good crop year. Has Mrs. M. received my package of photos? I mailed them and wrote her a letter some months ago. Hoping you will have compassion upon a poor soul, I will close, by subscribing myself," etc. By way of further assurance that the representations as to his financial condition were true, and that his request for time was made in good faith, he adds, by way of postscript, these words: "I want you to bear in mind that if W. B. Keene had not failed to comply with his contract I would surely have remitted the money. You may believe me or not, nevertheless it is the candid truth." (

On the same day of the above letter, Charles F. Hall, a brother of Clark N. Hall, and the person described in that letter as "Charley," wrote to Mendenhall, saying: "I take the liberty to pen you a few lines in regard to Concord and the business pertaining thereto. Some time ago Clark took the trouble and expense upon himself to go up and see you to try and effect a settlement. At that time you could just as well as not have had $2500 in cash; but it appears you would not take that. Well, since then things have changed here, so that it is agoing to be impossible for us to do anything until, say, January 1, 1883, for the following reasons, viz., W. B. Keene, a merchant doing business close to Concord, had arranged to supply Clark this year, but about two weeks ago failed in a manner; anyway, his commission merchants in N. O. say they will not advance him supplies for more than enough to run his own place; therefore it will necessarily compel us to take our money to run the place. I presume Clark has written you about this ere now, and also that he had rented Andrew's portion of the place. You can certainly see that it would be of no use to pay you the amount agreed to and then have no way or means of running the place, for we could make no other payments, as the place would lay idle and would therefore bring in no revenue. The way everything is now fixed,

the place will bring it in rent. I am here working for $1000 a year and all my expenses paid, and by January 1, 1883, we can and will pay you $2500. I have been here for two years and have saved nearly all my salary — and for what? To try and help Clark pay you for the place. I am anxious to settle this matter up, and you have been very kind in waiting as long as you have, and you have my word and honor that you shall be paid this fall the $2500 if the levee does not break at or near Concord. You can satisfy yourself by writing to Mr. Benjamin Keene, or any one that knows anything about our affairs here, whether I have written how things are here or not. And I feel safe in here saying that you will look at this matter just as I have, and think we have done just the best that could have been done under the existing circumstances. Please let me hear from you on this subject and I shall take pleasure in keeping you posted about things here, and you can depend on my doing all I can to help pay up. Please remember me kindly to Mrs. M., and with best wishes and trusting to hear from you ere long, I remain yours resp."

On the 17th of January, 1883, the land was sold for state and parish taxes due from Clark N. Hall for the years 1877 and 1878, and was purchased at the sum of $211.47 by Charles F. Hall, who took a deed from the sheriff.

The present suit was brought on the 4th of September, 1883, by Mendenhall against Clark N. Hall and Charles F. Hall. After setting out the above facts in relation to the purchase by Clark N. Hall, the execution of the notes for the price, the partition of the plantation among the owners, and the payment of the interest up to January 1, 1879, the bill alleges that Clark N. Hall had indulgence from the plaintiff from year to year, and visited the latter at his home in Ohio about the first of the year 1882, promising, while there, that upon his return home he would make a payment of $1500 on the notes; that after his return he and his brother Charles entered into a scheme to defraud the plaintiff; that with knowledge that the sheriff would be compelled by the statute of the State, Act No. 38 of 1882, to sell the property for unpaid taxes within four months after the promulgation of that act,

Clark N. Hall fraudulently failed to pay the taxes for 1877 and 1878, although he had agreed not to encumber the prop-- erty to the prejudice of the plaintiff or the said act of mort- gage, and although he represented to the plaintiff that he had paid the taxes on the land ; that Clark N. Hall and Charles F. Hall agreed between themselves that, in order to defeat the plaintiff's rights, the latter would become the purchaser at the . tax sale and take the title in his own name, intending thereby to procure the release of the property from the plaintiff's mortgage and privilege ; and that although Charles F. Hall pretends to have bought the property and claims to be the owner. thereof, his brother was living on the plantation and cultivating it as before the tax sale.   The bill stated various grounds upon which the tax sale should be declared null and void, and prayed that the sale be set aside ; that the plaintiff's mortgage and vendor's privilege to secure the balance due on the notes, together with the accruing interest, be recognized and rendered executory ; that the land be sold, by due process of law, to pay and satisfy that balance ; and that he might have such relief as was proper.

Charles F. Hall demurred to the bill for multifariousness, and filed a special plea to the effect that, by article 210 of the constitution of Louisiana, tax-titles are declared to be *prima facie* valid, and cannot be set aside without a previous tender to the purchaser of the price and ten per cent per annum interest thereon, having been made, which has not been done.

Clark N. Hall pleaded to so much of the bill as sought judgment against him for the amount of the notes, that equity . was without jurisdiction *ratione materiæ* to try the issues presented on said obligations.

The court below sustained both the demurrer and the plea of Charles F. Hall, and by a decree entered May 12, 1885, dismissed the bill as to him, without prejudice to the plaintiff's right to file a new bill.   It overruled the demurrer of Clark N. Hall, and the latter filed an answer, averring that he was no longer the owner of the premises, nor in possession thereof. He also averred that he was the lawful owner of two judg- ments against the plaintiff, one for $300 and $4.15 costs taxed,

and one for $240, with interest from April 4, 1876, and $4.70 costs taxed, both rendered May 12, 1876, by a justice of the peace in Delaware County, Ohio, in favor of the Elkart Wood Pulp Company, against John H. Mendenhall and others, partners doing business under the firm name of the Delaware Paper Company. He also averred that he was the legal holder and owner of a note for $1733.61, executed by the said Delaware Paper Company, through their secretary, J. L. Klein, and made payable to the order of Jacob A. Sharer, who endorsed it to James Andrews, the latter endorsing it in blank to the defendant in due course of trade and for a valuable consideration. He pleaded the said demands " in compensation of the notes sued upon."

To this answer a replication was filed, in which the plaintiff denied that he was bound for the payment of the obligations set up in the answer; denied that they were owned by the defendant; and averred, in respect to the note for $1733.61, that it was executed and obtained by fraud, was without consideration, was never negotiated or placed on the market until after its maturity, and was not a just debt against the Delaware Paper Company. A replication of this special character was not in accordance with correct chancery practice. But no objection was made on that ground, and it was treated as a proper replication.

Upon final hearing, on the 14th of April, 1886, the court gave judgment in favor of the plaintiff against Clark N. Hall for $5123, with interest at the rate of eight per cent per annum from December 24, 1875, until paid, and the costs, that amount to be credited with $1340.52 to date January 1, 1879, and also with $544.15 with eight per cent interest from April 4, 1876, to date and take effect from May 9, 1879. It also adjudged that the plaintiff's demand for recognition of the mortgage and vendor's privilege claimed in the bill be rejected as in case of non-suit without prejudice to his right to assert the same in a subsequent action.

[The plaintiff appealed from this decree and filed an appeal bond entitled in the cause, in which the obligors became " held and firmly bound unto the defendants therein; " but

the citation ran only to Clark N. Hall. The cause was duly docketed here, and when reached in its order on the docket, was submitted by the counsel for the appellant. On the 16th of December, leave was granted to make the representative of Charles F. Hall, (who had meanwhile died,) a party, with the right to file briefs on or before the first Monday in January then next. On the 9th of January, 1890, the counsel for the administratrix of Clark N. Hall appeared solely for the purpose of pleading to the jurisdiction, and represented that there had never been an appeal taken from the order dismissing the bill as to him. On the 18th of January, a citation issued to Charles F. Hall, or, if deceased, to his representatives, to appear on the 4th Monday of March then next, to show cause why the decree rendered against the appellant should not be corrected. This was served on his administratrix, and return thereof made into court. An appearance was entered for Charles F. Hall, and a brief filed.]

*Mr. John Johns* and *Mr. D. A. McKnight* for appellant.

*Mr. John T. Ludeling*, for the administratrix of Clark N. Hall, appeared solely for the purpose of questioning the jurisdiction of the court; and, as counsel for Charles F. Hall, appellee, submitted on his brief.

I. Charles F. Hall, though in possession, was not a necessary party. In Louisiana a third possessor is not a necessary party, in a suit against the maker of mortgage notes, to obtain judgment against him. Code of Practice, Arts. 63, 68.

II. The sheriff's deed to Charles F. Hall for the land sold at a tax sale is perfect in form and on its face valid. Article 210 of the constitution declares that "all deeds of sale made, or that may be made, by the collector of taxes, shall be received by the courts in evidence as *prima facie* valid sales."

The same article of the constitution declares, that "no sale of property for taxes shall be annulled for any informality in the proceedings until the price paid, with ten per cent interest, be tendered to the purchaser."

In accordance with the provisions of the Civil Code, the Supreme Court of Louisiana, in a long line of decisions, has held that it was a prerequisite to the institution of a suit to rescind a sale, that the purchaser should be paid the price given by him, or he should be tendered the price. Art. 1906 of the Civil Code declares: "The effects of being put in default are not only that in contracts to give the thing, which is the object of the stipulation, is at the risk of the person in default; but in the cases hereinafter provided for, is a prerequisite to the recovery of damages and of profits and fruits, or to the rescission of the contract."

A review of the decisions on this point was made in the case of *Lola Blanton* v. *Ludeling et al.*, in 30 La. Ann. 1232. A peremptory exception was filed to this suit, as in this case, that no offer or tender had been made to defendant of the amount paid by him at the tax sales at which it was alleged, in the petition, he acquired title, and which sums were applied to the payments of taxes and costs due. The court said: "We prefer to place our decision upon the exception alone, which is no longer an open question."

In *Miller* v. *Montagne and Husband*, 32 La. Ann. 1290, the Supreme Court said: "Proceeding to consider what judgment should have been rendered, we admit the general principle, that a party seeking to annul a tax title, *prima facie* valid, must first tender to the purchaser reimbursement of the sums paid by him in discharge of his bid, and which enured to the benefit of the attacking party, and this principle would, perhaps, extend to proper taxes on the property paid by the purchaser while in possession." *Blanton* v. *Ludeling, supra,* and *Barrow* v. *Lapine*, 30 La. Ann. 310. In the last-mentioned case it is further said : " And if this want of tender is pleaded *in limine,* and the amount is apparent or made to appear, plaintiff should not be allowed to sue until it is tendered."

In this case, the complainant has never offered to return the price paid by Charles F. Hall, nor has he alleged that he had done so, or was willing to do so. He had the right, under the law, to redeem the land within a year after the sale. This suit was filed within the year succeeding the sale.

It is respectfully submitted that the record, as well as the admission made in appellant's brief already referred to, show that there has been no appeal taken as to Charles F. Hall, and that the judgment in his favor has become *res judicata* by the expiration of the time within which an appeal might have been taken, and that this court is without jurisdiction over the case as to Charles F. Hall.

But, if this be not correct, then it is submitted that the evidence in this record shows that at a public sale for taxes Charles F. Hall bought the lands mortgaged and paid the taxes then due and the costs and penalties, and that he has been in the actual possession of said lands and paid the taxes thereon since January, 1883, the date of the sale. The title is *prima facie* valid. Constitution, Art. 210.

MR. JUSTICE HARLAN, after stating the facts as above reported, delivered the opinion of the court.

It is suggested that no appeal has been taken as to Charles F. Hall, and that this court is without jurisdiction over the cause as to him. In this view we do not concur. The cause was not finally disposed of as to Clark N. Hall, the remaining defendant, until the 14th of April, 1886, and on the 30th day of the same month the plaintiff was allowed an appeal " in the cause." His appeal bond was executed September 9, 1886, and ran " to the defendants." The record was filed here on the 12th of October, 1886. It appearing, when the case was reached on our docket, that Charles F. Hall had not been served with notice of the appeal, a citation was directed to be served upon him, or, if he was dead, upon his representative. The citation was executed January 13, 1890, upon his widow, who is also administratrix of his estate. There is no ground to question the jurisdiction of this court to proceed to a hearing of the appeal. The record was filed in this court on the day to which the appeal was returnable. Our jurisdiction did not depend upon a citation being issued, *Evans* v. *State Bank,* *ante,* 330, although we could not properly proceed to hear the case until Charles F. Hall, as to whom the suit was dismissed

in 1885, or his representative, was brought into court by citation. Rev. Civil Code La. Articles 1041, 1049, 1155; *McCalop* v. *Fluker's Heirs*, 12 La. Ann. 345. And the appeal brings before us not only the final decree of 1886, but that of 1885 sustaining the demurrer and plea of Charles F. Hall, and dismissing the suit as to him. It was not necessary to take an appeal from the latter order until after the whole case was determined in the court below. For these reasons the objections to our jurisdiction are overruled.

The first question, upon the merits, to be considered, relates to the demurrer and plea of Charles F. Hall. It is contended that he was not a necessary party to the suit to fix the amount of the indebtedness of Clark N. Hall, and that the demurrer, for that reason, was properly sustained. If that had been the sole object of the suit the plaintiff could undoubtedly have proceeded at law against Clark N. Hall alone. But such a suit would not have given the relief required. The plaintiff claimed a lien on the mortgaged property to secure the payment of the notes given by the mortgagor. The property was claimed by Charles F. Hall in virtue of a tax sale. While the latter might have been proceeded against alone for the purpose of determining whether his right to the land was not subordinate to the mortgage lien, it was competent, under the practice in equity prevailing in the courts of the United States, and in order that full and adequate relief might be had, to unite in the same suit both the mortgagor and the party claiming the property adversely to the lien of the mortgage, by virtue of proceedings had subsequently to its execution. If the plaintiff was entitled to have the property sold in satisfaction of the debt secured by the mortgage, it was his right to have it sold freed from any apparent claim thereon wrongly asserted by the holder of the tax title. Such relief could not be had without making the latter a party to the suit.

In respect to the plea of Charles F. Hall, we are of opinion that it ought not to have been sustained. The constitutional provisions that "all deeds of sale made, or that may be made, by the collector of taxes, shall be received by the courts in evidence as *prima facie* valid sales," and that "no sale of prop-

erty for taxes shall be annulled for any informality in the proceedings until the price paid, with ten per cent interest, be tendered to the purchaser," have no application to cases like the present one. If Clark N. Hall had attempted to have the tax sale set aside for mere informality, it would have been a good plea in bar to any suit by him against the purchaser, that he had not tendered the amount paid by him, with interest thereon —the plea showing distinctly the amount so paid. *Barrow v. Lapene*, 30 La. Ann. 310; *Blanton v. Ludeling*, 30 La. Ann. 1232. It is to suits of that character that the authorities cited apply. The case before us is altogether different. It proceeds upon the ground that a mortgagor who had agreed " not to sell, mortgage or in anywise encumber the property," to the prejudice of the mortgage, had fraudulently combined with his brother to defeat the mortgage lien by means of a sale for taxes due from the mortgagor, at which sale the brother was to bid in the property, in his own name, and for the protection of the mortgagor, assert his absolute ownership of it. It certainly was not intended that the mortgagee, in order to maintain a suit to enforce his lien, should tender to the mortgagor, or to his agent, the amount of the taxes, with interest thereon, the non-payment of which by the mortgagor had caused the sale to the prejudice of the mortgagee.

The case, in many respects, is like *Austin v. Citizens' Bank and Sheriff*, 30 La. Ann. 689, in which it appeared that a mortgage creditor proceeded directly against the mortgaged property which had been sold for taxes, and the title taken in the name of a third person. The holder of the tax title brought a suit to enjoin such proceeding. The court said: " The plaintiff [the holder of tax title] entrenches himself behind our ruling in *Lannes v. Workingmen's Bank*, 29 La. Ann. 112, and insists that his title must be held good until it is annulled in a direct action. But that principle holds good only as to those titles that are *bona fide*, and are acquired without fraud, or that are real and not simulated. Unquestionably a purchaser at a tax sale may acquire a good title to a valuable property for a small price, if the requisite formalities have preceded and attended the sale. . . .. But no government will

permit its machinery, constructed to enforce the payment of public dues to the fisc, to be used to manipulate a fraud, and if the purchaser is a party to the fraud he must share its punishment. It might be very different if he were wholly disconnected and unacquainted with it. The purchase by Moss was nothing more or less than a purchase by Mrs. Austin, the debtor and mortgagor, through her son, the plaintiff. The money paid as the price at the tax sale was only what she, as the owner of the property, owed the State, and what she honestly and in good conscience ought to have paid without, and before, and to prevent a sale. If she could not pay it, the debt being *exigeant* and of so high a rank, she should have acquainted her creditor and mortgagee with its imminence, instead of observing the suspicious reticence which characterized her conduct. The creditor's rights, as mortgagee and vendor, cannot be imperilled by the mortgagor's collusive combination with others to interpose an apparent but fraudulent obstacle in his way in enforcing those rights."

All that was said in that case is pertinent to the one before us. The mortgagor had obtained liberal indulgence as to time from the mortgagee. He made such representations of his embarrassed financial condition as induced the mortgagee to forbear taking steps to enforce his lien upon the property. He gave positive assurances that he would make a payment of twenty-five hundred dollars on the mortgage debt by the fall of 1882. He knew that there were taxes upon the property which it was his duty to pay, and that their non-payment endangered the security upon which his generous creditor depended for the payment of the notes given for the property. And his brother, with many expressions of friendship for the mortgagee and his family, joined in the appeals for time, assuring the mortgagee that he would himself assist in meeting the mortgagor's engagements to pay, if the mortgagee would wait until January 1, 1883. He voluntarily promised that he would keep the mortgagee "posted about things." But neither the mortgagor nor his brother informed the mortgagee that the land was advertised to be sold for the taxes which the mortgagor was under a duty to pay. The way in

which Charles F. Hall complied with his promise to keep the plaintiff posted was to withhold information as to the tax sale, buy the land for the amount of the taxes, and take the title in his own name. The evidence leaves no doubt that the non-payment of taxes by the mortgagor, and the purchase of the property by his brother, was in execution of a scheme upon their part to defeat the mortgagor's lien upon the land.

In respect to the credits allowed by the decree below upon his notes to the mortgagor, no error was committed. The credit of $1340.52, as of January 1, 1879, was a trifling amount in excess of the aggregate interest that had been paid by the mortgagor up to that date. The credit of $544.15 was for the amount of the two judgments rendered against Mendenhall by a justice of the peace in Ohio, of which Clark N. Hall became the owner on the 9th of May, 1879. The plaintiff being a non-resident of Louisiana, it was proper to allow that amount as a set off against the notes. *Spinney* v. *Hyde*, 16 La. Ann. 250; *Woolfolk* v. *Ship Graham's Polly*, 18 La. Ann. 693. As to the note for $1733.61, dated June 1, 1875, and executed by the Delaware Paper Company, the court below properly disallowed it as a set off. The evidence clearly showed that it was not an enforceable obligation against that company. The attempt to use it against Mendenhall is only additional evidence of the purpose to defraud him. But, for the reasons stated, the court below erred in rejecting the plaintiff's demand for recognition of the mortgage lien upon the property.

> *To the extent indicated the decree is reversed, with directions to enter a decree recognizing and establishing the mortgage of December 24, 1875, as against Clark N. Hall, and the succession of Charles F. Hall, and as giving a lien in behalf of the plaintiff superior and paramount to any right which the succession of Charles F. Hall has in the mortgaged property by virtue of the sale for taxes and the sheriff's deed to him, and ordering a sale of the mortgaged property to satisfy the above balance due the plaintiff upon the notes given by Clark N. Hall.*