PERELES, Appellant, v. KOCH et al., Respondents.

(136 N. W. 251.)

1. **Mortgages—Purchaser Subject to Mortgage—Payment of Taxes —Tax Title as Payment of Taxes.**

One who purchases realty subject to mortgage cannot conspire or act with the owner of a tax title who holds it in trust for such purchaser subject to a lien for tax sale taxes, and thus, by relying on the tax title, defeat the mortgage lien, the effect of taking such tax title, as regards such purchaser, is the same as would have been the direct payment of the taxes by such purchaser.

2. **Trust Relations Concerning Taxes, as to Mortgagee—Tax Title Interest as Payment of Taxes—Tax Deed as Security.**

A tax title holder who had agreed to transfer same to one who was owner of the land subject to a mortgage, on payment of the taxes and interest, may hold the tax deed as security for payment of the tax money by such owner; but, as between these parties and the mortgagee, the taxes were paid through such agreement.

3. **Tax Deed—Attack by Mortgagee—Statute of Limitations.**

Where a tax title holder conveyed it to a trustee for the holder of a deed who held subject to a mortgage, before the three year tax title limitation statute had run, such tax title deed remained subject to attack after the three years by the mortgagee for irregularities in tax proceedings, the parties in interest in the tax title being obliged to remove it as a cloud, if voidable; and such owner of the land subject to the mortgage being unauthorized to proceed to acquire perfect title as against mortgagee.

4. **Assignment of Error—Record—Scope of Review.**

While the assignments of error do not raise directly the trial court's failure to find a certain trust relationship involved in the evidence, yet, where the court found that a party to the trust holding a tax title is owner in fee of the land involved, thus indirectly finding there was no trust relation and no irregularities in the tax proceedings, such finding being assigned as error, the record on appeal presents the question of such trust relationship.

(Opinion filed, May 7, 1912.)

Appeal from Circuit Court, Davison County. Hon. FRANK B. SMITH, Judge.

Action by James M. Pereles against Christopher Koch and others, to foreclose plaintiff's mortgage. The defendant Agnes G. Foster claimed title and ownership under a tax deed. From a

judgment in favor of Agnes G. Foster establishing her ownership of the land in fee, and cancelling plaintiff's mortgage, and from an order denying a new trial, he appeals. Reversed.

*A. E. Hitchcock, for Appellant.*

From this record the only conclusion that can be drawn is that the Fosters and Mrs. Sickler agreed between themselves that for the purpose of cutting out the mortgage lien, Mrs. Sickler was to delay the redemption of the property from taxes, either by suit to set aside the voidable tax deed, or otherwise, and that after the lien had become absolute by the three years' limitation and the mortgage eliminated, the profits were to be divided between themselves. It is maintained that a court of equity will not permit such a transaction.

The law of our Supreme Court in the matter of permitting persons holding relations of mortgagor, mortgagee and fee ownership to tax titles is given in the following cases: Safe Deposit & Trust Co. v. Wickham et al., 9 S. D. 341, 9 S. D. 515; Barrett v. McCarthy, 104 N. W. 907, 20 S. D. 75; Graut v. Burton, 127 N. W. 480 (S. D.). Also Black an Tax Titles, Sec. 277; Fitch v. Noble et al., 96 Pac. Rep. 3; McAlpin et al. v. Zitser et al., 10 N. E. R. 901.

The rule as established by our court is that notwithstanding the tax deed has been of record for more than three years, an assessment being an essential element in taxation proceedings, if void will not support the deed, and evidence may be received showing the void assessment. Moran v. Thomas et al., 19 S. D. 469; Bandow v. Wolven, 20 S. D. 450.

Respondent states: "The assignments of error are insufficient to present any question of law or fact to this court," and citing a number of decisions.

Appellant respectfully maintains that an examination of these citations does not disclose any rule of law or practice applicable to the record of this cause.

The defense of the plaintiff and appellant to the tax deed adjudged to be valid by the trial court is set forth in the reply to defendant's answer. (Abs. pages 13-18, fol. 52-72.)

In findings of fact, paragraph IX, (Abs. page 78) the court finds that Agnes G. Foster is the owner in fee of the land herein described.

In the assignment of error, (Abs. page 88) the appellant cites specifically as error that the evidence is not sufficient to sustain the findings that Agnes G. Foster is the owner in fee of said land, and points out the contention of the appellant by the assignments argued in the brief.

*Gardner, Fairbank & Churchill,* for Respondent, Agnes G. Foster.

Brief of argument.    The assignments of error are insufficient to present any questions of law or fact to this court.    Hudlum v. Holy Terror Mining Co., 16 S. D. 261; Franz Faulk Brewing Co. v. Miellenz, 5 D. 138; State v. Chapman, 1 S. D. 414; Anthony v. Jillson, (Cal.) 23 Pac. 419; Raymond v. Texton, (Mont.) 17 Pac. 258; Spotts v. Hanley, (Cal.) 24 Pac. 738; DeMolera v. Martin, (Cal.) 52 Pac. 825; Kelley v. Mack, 49 Cal. 523; McLennan v. Wilcox, (Cal.) 58 Pac. 305; Bardwell v. Christian, 47 Cal. 18; Whaley v. Vidal, (S. D.) 128 N. W. 331; Thompson v. Ry. Co., (S. D.) 128 N. W. 809; Schmidt v. Carpenter, S. D. (not yet reported); Hedlum v. Holy Terror Mining Co., 16 S. D. 261-281.

It should be observed too that counsed does not argue the alleged assignment of error, so that it seems to be immaterial whether they are sufficient or not.    It is not only necessary that there be specifications of error in the bill of exceptions or statement of the case, upon which a motion for new trial has been presented, and that corresponding assignments of error be contained in the abstract, but it is necessary that these assignments of error be discussed by counsel on the appeal.    Otherwise they will be deemed as having been abandoned.    Edgmont Imp. Co. v. Tubbs Sheep Co., 115 N. W. 1130; Senn v. Connely, 120 N. W. 1097; Weitzel v. Leyson, 121 N. W. 868; Bolte v. Ins. Co., 121 N. W. 773; Reeve v. Railway Co., 123 N. W. 499.

Respondent is not estopped from asserting her tax title as against appellant.

Appellant's contention, that the respondent is estopped to assert her tax title, seems to be based upon the assumption that the defendant, Catherine J. Sickler, owed the plaintiff the duty of paying his mortgage indebtedness, and therefore of protecting this security. While appellant's cause of action, as tested by the pleadings, is based upon the note and mortgage executed by Christina Koch, counsel now seeks to shift his position and urge that his cause of action is in fact based upon an alleged agreement between appellant and the defendant, Catherine J. Sickler. Had this alleged contract been pleaded as the basis of plaintiff's cause of action, we submit that the complaint would have been subject to demurrer, and it would have been subject to a plea of the statute of limitation. In the first place it should be observed that it is a contract, if one at all, which under the statute of frauds should be made in writing, and therefore could not have been lawfully made by an agent, unless his authority to make the same were also in writing. Moody v. Howe, 17 S. D. 563; Hickok v. Bacon, 17 S. D. 545; Dal v. Fisher, 20 S. D. 426.

But even should it be admitted, for the sake of argument, that the instrument constituted a contract by which Mrs. Sickler became liable for the mortgage debt, still, we contend, that after respondent's tax deed ripened into an absolute indefeasible title, the relation of mortgagor and mortgagee certainly no longer existed between the appellant and Mrs. Sickler, and after that date she was at liberty to deal with the fee owner, Mrs. Foster, in whatever manner she liked. It should be observed that the so-called contract between Mrs. Sickler and Mrs. Foster, was not made until the 27th day of September, 1909, whereas, the tax deed was recorded July 16, 1906, and had become absolute by reason of the three years statute of limitations. Safety Deposit & Trust Comany v. Wickem, 9 S. D. 341.

The tax deed being regular upon its face and having been recorded more than three years prior to the commencement of its action the title of Agnes G. Foster has become indefeasible. Sabek v. Biddell, 124 N. W. 431; Gibson v. Smith, 124 N. W. 733; Northwestern Mortgage Co. v. Levtzow, 122 N. W. 600; Cor-

nelius v. Fergeson, 121 N. W. 91; Bandow v. Wolven, 20 S. D. 445.

WHITING, J.   This action was brought by the plaintiff as mortgagee to foreclose a real estate mortgage given by defendant Koch as mortgagor, which mortgage covered land owned, at time of action, by defendant Mrs. Sickler.   The other defendants were joined as parties in order to cut off certain rights which it was alleged they claimed to hold in such land.   Personal judgment was prayed against the mortgagor Koch.   The defendant Agnes G. Foster answered by way of general denial; her answer also containing a counterclaim wherein she pleaded title to said land under and through a certain tax deed which she alleged was superior to the mortgage lien and to the title of Mrs. Sickler.   Defendant W. C. Foster answered, setting up an interest in said lands under and by virtue of tax certificates issued upon tax sales, which interest he claimed was superior to those of all other parties.   This defendant afterwards, by leave of court, served and filed a supplementary answer, alleging title to said lands by virtue of tax deeds issued to him based upon the above-mentioned tax certificates.   Mrs. Sickler, answering the complaint, entered a general denial, replying to the counterclaim and cross-bill of Agnes G. Foster; she pleaded certain matters which she claimed rendered the tax deed of Agnes G. Foster invalid; and, replying to the answer of W. C. Foster, she entered a general denial.   The plaintiff, replying to the counterclaim and cross-bill of Agnes G. Foster, attacked the validity of the tax deeds; alleged that defendant W. C. Foster is the true owner of such tax deed; and that, owing to certain conduct of defendant W. C. Foster, he is estopped to set up his tax title herein as adverse to the mortgage interest of plaintiff; and, replying to the answers of W. C. Foster, plaintiff attacked the validity of the tax deeds pleaded by Foster, and pleaded that the taking of these deeds by Foster was in effect a mere payment of the taxes to protect the tax deed held by his wife, Agnes G. Foster.   Defendant Hoon defaulted.   Defendant Koch was not served with complaint.   The cause was tried to the court without a jury, findings and conclusions were rendered, and a judgment entered decreeing Agnes G. Foster to

be the owner of said land, canceling plaintiff's mortgage, granting Agnes G. Foster possession of said premises, and decreeing that plaintiff and all defendants other than Agnes G. Foster had no right, title, or interest in said premises. Plaintiff alone appealed.

The court found that Koch gave the mortgage to plaintiff to secure a note for $6,500; that Koch then owned the land; that Mrs. Sickler afterwards bought the land subject to the mortgage, but did not assume payment of same; that W. C. Foster bought the land on tax sale in November, 1903, and afterwards assigned the certificate to one A. E. Merrill who took deed thereon on July 13, 1906, such deed being recorded July 16, 1906, and being of record over three years prior to the commencement of this action; that such deed was valid on its face; that the property therein described was liable for taxation for the year 1902 (being year of tax upon which tax sale was based), that it was assessed for that year in proper district, and the taxes were not paid; that A. E. Merrill conveyed the land to Agnes G. Foster on December 14, 1908, by deed recorded August 23, 1909; that W. C. Foster paid all taxes subsequent to those upon which the deed to Merrill was based; W. C. Foster, being the husband of Agnes G. Foster, made such payment of taxes by the tax purchases he made and deeds he took thereon.

Upon the trial, after defendants Agnes G. and W. C. Foster had offered proof of the tax title under which the wife claimed and of the subsequent taxes which had been paid through tax sale purchase and otherwise by the husband, and which the court held were payments on behalf of the wife, plaintiff sought to attack the validity of the tax deed to Merrill by proof of irregularities appearing of record. The evidence offered was objected to upon the ground that the deed was valid on its face and, having been of record over three years, could not be attacked upon grounds not jurisdictional. The objections were overruled and evidence admitted, but the court made no findings whatsoever in relation to such irregularities.

In addition to the facts found by the court, the following appears from the evidence received herein: As early as August, 1907, W. C. Foster opened negotiations with Mrs. Sickler look-

ing toward a sale to her of the tax interest in this land held under the tax deed to Merrill, and, upon October 12, 1908, he offered to send a quitclaim deed from Merrill to whomsoever Mrs. Sickler desired; she to pay therefore $748.44, the amount of the taxes claimed by Foster to have been represented by the tax deed in August, 1907. It seems there were further negotiations between Foster and Mrs. Sickler, and upon December 12, 1908, Foster wrote her that he was about to send a quitclaim deed from Merrill to a trust company in New York for delivery to her upon payment of said $748.44, being "just the amount which we have always figured on for the taxes of 1902 and 1904." He called attention to the fact that he held certificates of sales for later taxes, and that upon those for one certain year he could take out tax deeds upon 60 days' notice, and further stated: "I shall not give this notice, without first writing you, until after August. I want to urge you to let this matter remain in statu quo until after three years has expired from the record of the tax deed held by Mr. Merrill. Do not fill in the name of the grantee in the quitclaim from Mr. Merrill, and do not record the same. Let the entire matter, remain as it is, as though forgotten or neglected until after July 16, 1909. My interest in this matter is simply that you may ultimately receive from the property a very much larger sum than you would get if you paid up and straightened up the tax liens on the records. If I could see you personally I could talk very much plainer, but you will remember when you were in Chicago I urged you strongly to let me carry the property until the expiration of three years. By giving you a quitclaim deed from Mr. Merrill it divests us of any chance to take advantage of the expiration of three years, but you can still take advantage of it if you follow my recommendation."

On December 19, 1908, Foster again wrote Mrs. Sickler, acknowledging the receipt of a letter from her, and advising her that he had forwarded the deed to the trust company on the 14th. He further wrote: "If you desire to see me personally with reference to the matter, you may ask the trust company to return the papers to me and come to Chicago any time between Chirstmas and the New Year. I don't think, however, that the expense is

necessary at this time. Of course you cannot obtain the remainder of the money from the purchaser [defendant Hoon] of the property until the title is put into perfect shape. You have now waited over two years for this money, and it will not be a serious matter if you should wait eight months longer, in the hope that the tax deed from Mr. Merrill may become absolute at the end of the three years' period and thereby shut out the mortgage. I have furnished you with a quitclaim deed from Mr. Merrill with the name of the grantee left blank. This conveys to whoever you wish such title as Mr. Merrill has. It is essential, however, that your name is not inserted in this deed and that the deed be not recorded until the expiration of three years' period, and it would also be best if you do not even advise your attorney or any one else that you have this deed. Perhaps I am unduly interested in this matter, but my object has been to try to save you some money. If you should be coming this way in the near future, any time before next August, I should very much like to see you and explain in person what is rather difficult to put in writing."

It seems that the trust company refused to accept the deed and pay over the money owing to certain claimed defects, and the deed and other papers were returned to Foster, and on December 28, 1908, Foster wrote Mrs. Sickler: "On my return today, I have your favor of the 22d together with the papers which I had sent to the Guardian Trust Company. I quote from your letter, 'In looking over this deed, I find that there are several erasures and alteration in the paper.' I have the deed before me and am quite at a loss to know what you mean by erasures and alterations. There is no erasure on the deed from Mr. Merrill and absolutely no alteration. The deed from the treasurer to Mr. Merrill was scratched up considerably, but it is just as received from the county treasurer. If you will be more explicit in your objections to the deed, perhaps I can meet them." On January 21, 1909, Foster wrote Mrs. Sickler as follows: "I have your favor of January 18th from which I read as follows: 'My lawyer says I must insist on having a deed from Mr. Merrill, otherwise you must indorse and secure it, so that there can be no hereafter to

Mr. Merrill's quitclaim deeds. This sentence is not quite clear. I do not understand what you mean by my 'indorsing and securing it.' I obtained a quitclaim deed from Mr. Merrill and still have same in my possession. Would it not be well to let this matter drop until you are coming to Chicago when we can take it up personally? Nothing will be affected by further delay, and I assure you again that I would under no circumstances take any advantage of you, and that what I have done so far has been with the sincere desire to assist you to regain title to the property and cut out a large amount of liens. I shall be absent from home much until the middle of March, but after that time or any time during the summer you can make an appointment with me by giving me two or three weeks' notice. I would advise that there is no necessity for a special trip, but it may be you will be coming West some time during the spring or summer." On March 29, 1909, Foster wrote Mrs. Sickler: "If you are not worrying seriously about the Mitchell property, just let the matter rest for a time as it is. Perhaps you will be coming West this summer and we can then go over the matter together in person. Meanwhile, you may rest assured that I will protect your interest and that the matter will remain in exactly the same condition as it has been in during the last few months. If you are coming West during the summer, let me know beforehand, so that there may be no possibility of your missing me." On June 29, 1909, he wrote: "On my return today, I have your favor of the 17th. I shall be absent from home for a couple of weeks after July 4th and during the first two weeks in August, with these exceptions, you will find me at home at the Plaza Hotel, Chicago. I could see you any day this week, but if it is not practicable for you to be here, let me suggest that you postpone your visit until the third week in July. You and I will have no difficulty in adjusting our tax matters, and I feel that the delay is to your personal and financial advantage." On August 21, 1909, he wrote her two letters as follows: "On my return from North Dakota, I have your letter dated at Mitchell, August 11th. I am leaving Monday, the 23d, to be absent on the Pacific Coast, and until my return on October 1st, I can do nothing with reference to the Mitchell prop-

erty. On the 19th of July, you were here and you made an appointment with me at my home for the next day, the 20th, at which time I expected we would come to a settlement of this matter. I remained in the city all the week expecting that each day I would see you or hear from you over the phone. I do not understand why the appointment was not kept. On my return I will take the matter up with you along the lines that I outlined to you when you were here. Let me ask you not to be induced by any one to pay out any money at all for liens or mortgages on this property. In view of the fact that absolute title has passed from you and that the title renders valueless all liens or mortgages excepting the tax liens, it would be like throwing money away to pay out a cent." "Since writing you today, I have your letter dated the 17th. There isn't anything that you can do in this matter. You would doubtless be glad to fulfill your agreement to sell the property if you could give good title to it, but this is a legal impossibility which you cannot be compelled to do. The parties now occupying the property have never paid a cent of taxes on it. I had the recent tax notice served on them for the purpose of putting additional liens beyond redemption. When the period for redemption expires on these new liens, on my return, I shall go to Mitchell in person, and shall get possession of the property, holding the occupants for rent, for a period of over three years. All of this is in accord with the plans which I outlined to you. I told you that there would be a fuss raised in this matter, but that it would be of no avail. There is no doubt of my legal position. There is just one think I ask you to do—come to see me on my return—I shall make it a point to be home by September 25th, and do not spend any money in connection with this property."

Upon September 27, 1909, the following agreement (Exhibit M) was entered into between Agnes G. Foster and one Bradley as trustee for Mrs. Sickler: "This agreement made in duplicate this 27th day of September, in the year 1909, by and between A. G. Foster of Chicago, Illinois, party of the first party, and Joseph P. Bradley, trustee, of Chicago, Illinois, party of the second part, witnesseth, that whereas, the party of the first part is the owner

through a tax deed of lots eight and nine in block nineteen, original plat of the city of Mitchell in the county of Davison and state of South Dakota, and whereas, the party of the second part claims to have some interest in the said described property. Now, therefore, the party of the first part agrees to proceed immediately to take steps to adjust and quiet title in herself to the said described property and to proceed to make sale of the same for the best price obtainable and to complete the said adjustment and sale at the earliest possible date and within one year. It is agreed that said sale shall not be made for a consideration of less than sixteen thousand dollars without the express consent of the said second part. It is further agreed between the parties hereto that the money received from the sale of the property shall be divided as follows: First. That the sum of sixteen hundred and ninety dollars, togethr with the amount of the taxes paid on the said property subsequent to the year 1908 and the actual and necessary moneys paid out for adjusting the title, including costs and attorney's fees, shall belong to the said first party. Second. That the sum of seventy nine hundred dollars shall belong to the said second party. Third. That the remainder of the money received from sale of said property after deducting the above sums, shall be divided equally between the parties hereto. It is further agreed between the parties hereto that should the party of the first part be unable to adjust and quiet the title to the said premises in herself, and should her title fail, there will be due to the party of the first part from the said party of the second part only the sum of sixteen hundred and ninety dollars, together with the amount of taxes paid on said property subsequently to the taxes of the year 1908 and that the remainder of this agreement shall be void and of no effect."

The tax deed to Merrill was recorded July 16, 1906, and the three-year statute would thus expire on July 16, 1909. On July 15, 1909, Mrs. Sickler called at the home of the Fosters, and, not finding the husband there, advised Agnes G. Foster that she had a certified check for $748 she desired to give Mr. Foster, which check Mrs. Foster examined and handed back to Mrs. Sickler. Mrs. Sickler was advised that Mr. Foster would not be at home

until the following Sunday, being then out of the city. Mrs. Sickler testifies: "Well, I met Mr. Foster that Sunday and I offered him the check and he laughted at me and said it was for my good to let it remain as it was. I pleaded with him to take the check because I wanted to make settlement with Mr. Hoon to take the property. He would not hear to that at all. That was about the amount of our conversation. I have had a written agreement with Mr. Foster about this tax property since that time. I have this agreement with me." Witness produces paper. Same is marked "Exhibit M." Witness continues: "I was present when this was signed. It was signed by my brother and Agnes G. Foster. At the time of the signature of this paper, there were present Mr. and Mrs. Foster, their maid, and J. P. Bradley, my brother. This paper, 'Exhibit M,' was signed by my brother in my behalf."

Bearing in mind the date of the deed from Merrill to Agnes G. Foster, it is very apparent that it is one and the same deed sent by Foster to the trust company for Mrs. Sickler, and from all the evidence it is clear that Mrs. Foster stands in no better position than W. C. Foster would have stood in if he had taken the deed to himself. The scheme of Foster is perfectly apparent; and, if it had not involved Mrs. Sickler and her interests therein, would undoubtedly have been legitimate, but without Mrs. Sickler's joining therein it undoubtedly could never have been carried out, as it is highly improbable that Mrs. Sickler would ever have allowed a tax title to have been perfected against this valuable property, except under some agreement whereby she would not lose her very valuable equity therein. Here is a piece of property which these parties apparently considered worth at least $16,000, and plaintiff held a mortgage against same securing some $4,500 and interest. The interest of the Fosters therein seemed to be some $1,600. The plan, as revealed by Foster's letters, was, originally, that Mrs. Sickler should take the tax interest from Merrill but have the deed filled out to some other party; the design being to cut off the mortgage, thus giving Mrs. Sickler the full benefit thereof. But, after the three-year statute had apparently barred any attack upon the tax title, the contract was made (Exhibit M).

under the terms of which, if Mrs. Foster perfected her title, the Fosters were to receive the amount of their tax interest, then Mrs. Sickler the amount of her equity above mortgage and taxes, and the Fosters and Mrs. Sickler were to share equally what had been saved by the cutting out of the mortgage lien. That the carrying out of such a scheme would be a rank fraud upon the rights of the mortgagee is apparent. Remembering that to carry out this scheme it was necessary to make Mrs. Sickler a party thereto, it is to be considered just the same, so far as its fraudulent character is concerned, as though this scheme had been concocted prior to the purchase of this land by Foster in November, 1903, and the following words of the Supreme Court of Iowa in Fair v. Brown, 40 Iowa, 209, become directly applicable herein: "A mortgagor, or one claiming title under him, cannot defeat the lien of the mortgagee by acquiring a tax title upon the land Porter v. Lafferty, 33 Iowa, 254; Stears, Administrator, v. Hollenbeck, 38 Iowa, 550. The rule, in these cases, is based upon the obligation of the mortgagor, or the party claiming under him, to pay the taxes; therefore the act of the party acquiring title through his own default is held to be fraudulent. In the case before us no such obligation rested upon defendant, for he was simply a lien-holder and was bound neither by the law nor contract to pay the taxes which were the foundation of his tax title. But in another view his act is fraudulent against the plaintiff and the mortgagor. The land is a common fund for the payment of plaintiff's mortgage and defendant's liens. Defendant was authorized to redeem from the tax sale. Rice v. Nelson, 27 Iowa, 148. Equity will not permit him to acquire the title for an inconsiderable sum when he was authorized to remove the trifling incumbrance by redemption. Though not bound to pay the tax, yet it was his right to do so to protect his own liens. He cannot obtain that protection by pursuing a course that will deprive the mortgagee of his security and leave the mortgagor to sustain the weight of the liens, which are personal judgments, after being deprived of his property by tax title. Equity will relieve against such oppression and teach the grasping creditor moderation in his

demands, and that he cannot destroy others to build up his own fortune."

Even more in point is Mendenhall v. Hall, 134 U. S. 559, 10 Sup. Ct. 616, 33 L. Ed. 1012, wherein Justice Harlan quoted with approval the following from Austin v. Citizens' Bank et al., 30 La. Ann. 689: "But no government will permit its machinery, constructed to enforce the payment of public dues to the fisc, to be used to manipulate a fraud, and, if the purchaser is a party to the fraud, he must share its punishment. It might be very different if he were wholly disconnected and unacquanited with it. The purchase by Moss was nothing more or less than a purchase by Mrs. Austin, the debtor and mortgagor, through her son, the plaintiff. The money paid as the price at the tax sale was only what she, as the owner of the property, owed the state, and what she honestly and in good conscience ought to have paid without and before and to prevent a sale. If she could not pay it, the debt being exigent and of so high a rank, she should have acquainted her creditor and mortgagee with its imminence, instead of observing the suspicious reticence which charactertized her conduct. The creditor's rights as mortgagee and vendor cannot be imperiled by the mortgagor's collusive combination with others to interpose an apparent but fraudulent obstacle in his way in enforcing those rights."

And in Avery v. Judd et al., 21 Wis. 265, a case brought by a mortgagee to set aside a tax deed by Judd *who had purchased the land subject to the mortgage* as had Mrs. Sickler in this case, Judd having taken an assignment of the certificate of sale and afterwards taken out a deed, the court used the following language remarkably applicable to the facts of the case before us: "The mortgagor and those in possession under him, subject to the payment of the mortgage, hold the estate clothed with a fiduciary duty. The estate, to the extent of his interest, belongs to the mortgagee, and the mortgagor and his grantees are in trusted with the care of it; and, being so intrusted, they are bound in equity and conscience to do no act and to suffer none to be done which shall destroy the mortgagee's title or impair his security. * * * Judd, as the holder of the estate by conveyance from the

mortgagor subject to the mortgage, was precluded from acquiring title by tax deed as against the mortgage. He stood in the place of the mortgagor whose duty it was to have paid the taxes. This was the duty of the mortgagor in possession, not only by virtue of that relation, but more particularly because of the covenant which he had made to pay all taxes. The same duty devolved on Judd upon conveyance of the premises to him subject to the payment of the mortgage. It is therefore very properly conceded by his counsel that the tax deed in his hands is utterly void as against the plaintiff."

[1] Under the above and many other authorities, the position of the purchaser who takes subject to the mortgage, so far as his right to allow a tax title to issue against the mortgaged property, is exactly the same as would be the position of the mortgagor or of a purchaser who assumed payment of the mortgage, and the effect of taking such tax title is the same as would have been the direct payment of the tax by such party.

[2] Respondent contends that the pleadings were insufficient to raise any question of fraudulent intent on the part of Mrs. Sickler and Foster. Conceding that to be true, such pleadings were sufficient to admit proof of a trust relationship between Mrs. Sickler and Foster, which relationship such proof fully established; then, disregarding any fraudulent intent and considering that Mrs. Sickler's one purpose was to do that which under the law it was her duty to do—keep the land free from tax liens—as soon as Merrill executed the blank deed on December 14, 1908, and it had been agreed by Mrs. Sickler that she was to take this tax interest, to all intents and purposes the tax was paid, except that, as between Foster and Mrs. Sickler, Foster had a right to hold the deed to secure the payment of the money.

[3] It might be urged that in this case neither Mrs. Sickler nor Foster took the tax deed, and that there is no rule of law forbidding the owner of land subject to a mortgage from acquiring a valid title from a person holding same, though such title results from the nonpayment of taxes which it was the duty of such owner to pay and holding such title as paramount to the interest of the mortgagee. It is true there is nothing showing that Merrill

did not act in perfect good faith and did not acquire a deed that was perfectly good as against the interest of both the plaintiff and Mrs. Sickler, providing such title was not open to attack upon grounds of irregularities in the tax proceedings; but, without passing upon the question whether Mrs. Sickler would have the right to acquire such title and hold same as against the mortgagee, we find that, at the time Merrill parted with the deed, the three-year statute had not run, and such deed was open to attack for any irregularities in the tax proceedings; this being true, such deed, in the hands of Mrs. Sickler or her trustee, must still remain subject to such attack regardless of such statute. This must be true because if such deed was voidable it was the duty of Mrs. Sickler to have removed it as a cloud, and she could not purchase it, disregard the irregularities, and by lapse of time acquire a perfect title thereunder, and, if she could not directly, she could not through a trustee.

[4] But again we are confronted with the claim that there is no assignment of error upon which a reversal can be based. It is to be regretted that, upon the trial below, the plaintiff, as soon as he knew of the evidence at his command, or at least as soon as all the evidence was in, did not ask to amend his pleadings directly raising the question of fraud, and it is to be regretted that his assignments of error did not raise directly the court's failure to find the trust relationship existing between the Fosters and Mrs. Sickler and its failures to find the facts concerning any irregularities in the tax proceedings. The court did find that "Agnes G. Foster is now the owner in fee of all the land, * * *" thus indirectly finding that there was no trust relationship and no irregularities in tax proceedings. In view of such finding (which is directly assigned as error, and the reason why it is error specifically pointed out), we believe there is sufficient to present such questions upon this appeal.

The judgment of the trial court and order denying a new trial are reversed.