## SIDNEY BLUMENTHAL & CO., Inc., v. UNITED STATES et al.

Circuit Court of Appeals, Second Circuit.
January 7, 1929.

No. 87.

248

Charles H. Tuttle, U. S. Atty., and H. F. Birnbaum and Anthony M. Menkel, Sp. Asst. U. S. Attys., all of New York City, for appellant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Cletus Keating and James H. Herbert, both of New York City, of counsel), for appellee.

Henry N. Longley, of New York City, for libelant.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). ▉ The first question is of the appealability of the decree dismissing the petition, which was not separately appealable before the amendment of April 3, 1926, to section 129 of the Judicial Code (28 USCA § 227). Oneida Navigation Co. v. Job & Co., 252 U. S. 521, 40 S. Ct. 357, 64 L. Ed. 697. It makes no difference whether that act covers the case, since, even so, it was in addition to the existing right to raise the question on appeal from the final decree. Mendenhall v. Hall, 134 U. S. 559, 567, 568, 10 S. Ct. 616, 33 L. Ed. 1012. The appellee argues that, since the final decree said nothing of the dismissal of the petition, but gave judgment only upon the libel and answer, the appellant must be understood to have abandoned its suit under the petition. Only in case the final decree had incorporated at least by reference the interlocutory decree could that be raised upon appeal. So far as we can find, this suggestion has no support in the books, and there is no reason why we should give it any as an original proposition. The dismissal of the petition ended the suit between the appellant and appellee; it would have been an idle formality to repeat in the final decree what had already been once adjudicated.

Two questions arise upon the petition; its sufficiency in law and the jurisdiction over it of a court of admiralty. Arguendo we may assume that the agent was not liable to the libelant upon the bill of lading, which it signed only on behalf of the Fleet Corporation, and that its liability to the United States upon the contract between them was not cognizable in a court of admiralty. If liable to the libelant, it is as a tort-feasor, and there are only two possible grounds for so holding: First, that it converted the goods; and, second, that it intentionally prevented performance of its principal's contract. When the Fleet Corporation took possession of the goods at Shanghai it was on a bailment defined by the terms of the bill of lading, which gave it the power to deliver at Seattle to either of the two specified lines. This it did not do, but wrongfully delivered to another line. The ensuing liability has at times been spoken of as that of an insurer, but courts have also treated it as a conversion. Saxon Mills v. N. Y., N. H. & H. R. R. Co., 214 Mass. 383, 101 N. E. 1075; Phillips v. Brigham, 26 Ga. 617, 71 Am. Dec. 237; Georgia R. R. v. Cole, 68 Ga. 623; Lincoln Grain Co. v. C., B. & Q. R. R. Co., 91 Neb. 203, 135 N. W. 443. We do not suggest that a deviation falls within the same principle, but the situation is similar to that where a bailee, having possession for a limited purpose, uses the property beyond the terms of the contract. Perham v. Coney, 117 Mass. 102; Morton v. Gloster, 46 Me. 520; Raynor v. Sheffler, 79 N. J. Law, 340, 75 A. 748; Hart v. Skinner, 16 Vt. 138, 42 Am. Dec. 500; Lane v. Cameron, 38 Wis. 603. If the principal is liable for such a tort, so is the agent who directly commits it. However, although it is for these reasons somewhat difficult to see why the appellee was not liable in conversion, we prefer to rest our ruling upon another ground. ▉ Though the appellee was under no obligation to the shipper under the bill of lading, and need not have raised a finger in its performance, it by no means follows that it was free to take affirmative action which prevented performance. Had it merely abandoned the ship and left the goods at Seattle, the shipper could have called to account only the principal; but, when it deliberately transshipped the goods by a wrong ship, it was in the same position as any other third person who intentionally brings about the breach of a contract. The case is stronger than Lumley v. Guy, 2 E. & B. 216, and the many cases which have followed it, in respect of the nature of the interference, which in those cases was usually persuasion, while here it was physical prevention. It

does, however, differ from that case, in that the contract was not one of service, and the motive was presumably to further the promisee's interests, instead of personally to profit by the breach.

The first difference is no longer a limitation upon the doctrine (Angle v. C., St. P., etc., R. Co., 151 U. S. 1, 14 S. Ct. 240, 38 L. Ed. 55; Bitterman v. L. & N. R. Co., 207 U. S. 205, 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693; Miles Medical Co. v. Park & Sons Co., 220 U. S. 373, 31 S. Ct. 376, 55 L. Ed. 502; Tubular Rivet & Stud Co. v. Exeter Boot & Shoe Co., 159 F. 824 [C. C. A. 1]; American Malting Co. v. Keitel, 209 F. 351 [C. C. A. 2]; Beekman v. Marsters, 195 Mass. 205, 80 N. E. 817, 11 L. R. A. (N. S.) 201, 122 Am. St. Rep. 232, 11 Ann. Cas. 332; Jones v. Stanly, 76 N. C. 355); but the question of "malice" is more difficult. In the earlier cases the courts generally added that "malice" or some unlawful means was an essential element to the liability. Lumley v. Guy, supra; Bowen v. Hall, L. R. 6 Q. B. D. 333; Rice v. Manley, 66 N. Y. 82, 23 Am. Rep. 30; Jones v. Stanly, 76 N. C. 355. The notion may be found in more recent cases (Angle v. C., St. P., etc., R. Co., supra; Morgan v. Andrews, 107 Mich. 33, 64 N. W. 869), though it is usual, when any motive is required, to define it as a purpose to profit at the promisee's expense (Bitterman v. L. & N. R. Co., supra; Lewis v. Bloede, 202 F. 7 [C. C. A. 4]). But there is a substantial body of authority saying that the liability depends upon the actor's intention to cause the breach, which puts upon him the duty to show some excuse or justification. Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 256, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461; Robins Dry Dock v. Flint, 275 U. S. 303, 48 S. Ct. 134, 72 L. Ed. 290; Tubular, etc., Co. v. Exeter Boot & Shoe Co., supra; Walker v. Cronin, 107 Mass. 555; Beekman v. Marsters, supra; Mogul S. S. Co. v. McGregor, L. R. 23 Q. B. D. 598, 613; Brennan v. United Hatters, 73 N. J. Law, 729, 745, 65 A. 165, 9 L. R. A. (N. S.) 254, 118 Am. St. Rep. 727, 9 Ann. Cas. 698. Perhaps it would be untrue to say that the doctrine has as yet come to rest, but it seems probable that, when the wrong is in procuring the breach of an existing contract, as distinct from interfering with the plaintiff's business or trade, motive will in the end disappear as a constituent element, though it may indirectly be material.

The first step was to recognize that a promisee had any rights, except as against the promisor. That bridge crossed, and the person who induced or made inevitable the breach being recognized as a tort-feasor, there seems to be no reason for treating the tort as different from any other. Conduct which produces a loss may of course be privileged; that is to say, the actor may be asserting or protecting some interest which the law admits as an excuse, and his motive is at times relevant. Perhaps this is merely because it is thought reprehensible, though the more satisfactory reason is that his purpose may disclose that he is not genuinely engaged in asserting the protected interest, in which case no conflict really arises between it and the interest of the injured party. But, if he have no interest to assert, he can have no privilege and his motive can hardly be material.

In the case at bar we have only the petition, and that, indeed, inartificially drawn. But no circumstances appear from which to infer an interest which can protect the agent in effecting the breach. It had no reason of its own which required it to disregard the instructions of the shipper; even though it honestly meant to expedite the carriage, it had no right vicariously to substitute itself for him; it was bound to follow the contract, or to abstain altogether. And so its motive was irrelevant, and need not have been alleged. Nor can there be any question, at least prima facie, that the breach was intentionally caused. The agent knew the bill of lading which it had prepared; it could not have been ignorant that the transshipment violated its terms; the agency was of itself no protection. Sloan Shipyards Co. v. U. S., 258 U. S. 549, 567, 42 S. Ct. 386, 66 L. Ed. 762. The petition alleged enough to withstand dismissal, though perhaps the appellee is entitled to a better statement.

The jurisdiction of the admiralty over such a tort admits of no question; it took place upon navigable waters, which is prima facie the test. Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 S. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157. It is true that in that case the question was left open whether there might not be torts committed on the water of which the admiralty would not take cognizance. Assuming as much, and that therefore the quality of the act may at times be determinative, this was a maritime transaction; it was a part of the carriage of goods by sea, unauthorized, indeed, and so wrongful, but no different for that reason from any other carriage. If any tort be maritime, certainly this was one.

So we think that the petition stated a

maritime cause of suit between the libelant and the party impleaded, which the respondent might under the fifty-sixth rule bring into concourse with the suit in chief. The decree dismissing the petition is reversed, and the cause remanded for answer by the Admiral-Oriental Line, Inc., which must have its day in court. The decree against the respondent will stand, since there are no errors urged.

Decree reversed, and cause remanded.