*J. P. Sweeney, H. R. Dow & L. S. Cox,* for the plaintiffs.

GABRIEL E. BEEKMAN *vs.* GEORGE E. MARSTERS.

Suffolk. March 26, 1907. — April 6, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Unlawful Interference. Equity Jurisdiction,* To enjoin unlawful interference with contract. *Words,* "Malice."

The proprietor of a tourist agency who has a contract with a corporation erecting a hotel on certain exposition grounds, appointing him the exclusive agent of the corporation within a designated territory to procure patronage for the hotel, for which he is to receive a certain price a day for each person sent by him to the hotel, may maintain a bill in equity to enjoin a rival ticket and tourist agent from inducing the corporation to break its contract with the plaintiff by employing the defendant as its agent for the same territory and from preventing the plaintiff from acting as the exclusive agent of the corporation for such territory, on showing that the defendant induced the corporation to break its contract with the plaintiff for the purpose of getting for himself the business to which the plaintiff alone was entitled under his contract with the corporation, and showing further that damages will not afford the plaintiff an adequate remedy.

It is no defence to a suit in equity to enjoin the defendant from inducing a third person to break his contract with the plaintiff, that the defendant induced the

third person to break the contract merely for the purpose of increasing his own business and with no desire to injure the plaintiff.

In a suit in equity to enjoin the defendant from inducing a third person to break his contract with the plaintiff, proof that the defendant with knowledge of the contract between the plaintiff and the third person intentionally and without justification induced the third person to break it is proof of malice within the meaning of that word as used in opinions of this and other courts.

Whether contracts which equity will enforce specifically stand on a different footing from other contracts in regard to the proof required to support a bill in equity to restrain a defendant from inducing a party to such a contract to break it, here was not considered.

The rule that a plaintiff in equity must come into court with clean hands ordinarily is applied only to the plaintiff's rights against the defendant.

In a suit in equity by the proprietor of a tourist agency, who had a contract with a corporation erecting a hotel on certain exposition grounds, appointing him the exclusive agent of the corporation within a designated territory to procure patronage for the hotel, for which he was to receive a certain price per day for each person sent by him to the hotel, against a rival ticket and tourist agent to enjoin him from inducing the corporation to break its contract with the plaintiff by employing the defendant as its agent for the same territory and from preventing the plaintiff from acting as the exclusive agent of the corporation for such territory, the defendant set up the defence that the plaintiff's contract with the corporation was procured by fraud and that all that the defendant had done was to tell the corporation the truth. The master to whom the case was referred did not find fraud, and it appeared that the corporation did not elect to rescind its contract with the plaintiff for fraud or for any other reason, and it also appeared that the defendant did not confine himself to telling the corporation the truth about false representations of the plaintiff by which he procured the making of the contract, but went further and urged as an argument for inducing the corporation to break its contract with the plaintiff that it was a mistake to appoint an exclusive agent at all and that the corporation could make more money if its agency was not exclusive, no matter who the agent was. *Held,* that, assuming without deciding it that the plaintiff could not have maintained a bill for interference with his contractual rights if the contract in question had been procured by his fraud, the defendant had not made out a defence on that ground.

Where a plaintiff in equity proves that the defendant unlawfully interferes with or threatens to interfere with his rights under a contract and further proves that damages will not afford him an adequate remedy, he is entitled to an injunction.

LORING, J.   This suit came before the single justice on the report of a master to which no exceptions had been taken by either party, and was reserved by him for our consideration and determination without any ruling or decision having been made.

The master found that on November 21, 1906, a contract was made between the plaintiff and the Jamestown Hotel Corporation. That corporation is erecting or has erected a hotel within the grounds of the Jamestown Exposition to be held be-

tween April 26 and November 30 of this year. This hotel is known as the Inside Inn, and is to be the only hotel within the exposition grounds. The plaintiff is the proprietor of a tourist agency, having an office at 293 Washington Street, Boston. By the contract between the plaintiff and the Hotel Corporation the plaintiff agreed to represent the Hotel Corporation throughout the New England States, to establish sub-agencies in that territory, and to use every possible endeavor personally and through his agents to book persons for the Inside Inn ; and the defendant agreed : " That you [the plaintiff] shall be our exclusive agent in said territory " ; to pay the plaintiff twenty-five cents a day for each person sent by him to the hotel ; and to furnish the plaintiff with all necessary " literature."

Immediately upon being thus appointed the exclusive agent of the Hotel Corporation the plaintiff prepared and issued a " Fall Edition " of his " Tickets and Tours," in which *inter alia* a description is given of the Jamestown Exposition and of the Inside Inn. Following this is the statement that the plaintiff has been appointed New England agent for the exposition " and exclusive representative of the Inside Inn."

The defendant is found by the master to be a ticket and tourist agent, with an office at 298 Washington Street, Boston. On January 11, 1907, he went to Norfolk, Virginia, and called upon the officers of the Hotel Corporation there. At this time he " had seen the contract between the complainant and the hotel corporation, but had not read it, and knew that the company had practically consummated a contract making Beekman its sole representative in New England." The defendant at this interview told these officers " that it was a mistake for the corporation to give an exclusive agency in New England to any one man, and that more business would be brought to the company if all agents were given equal terms," and to enforce his arguments stated that the business done by the plaintiff was insignificant and that the statement was false which was made in the summer edition of his " Tickets and Tours " that certain persons therein named had his tickets and tours for sale. It appeared that the summer edition of this catalogue had been shown to the Hotel Corporation by the plaintiff when he made his contract with it.

The master found that " As a result of the solicitations or

representations made by the respondent, the Jamestown Hotel Corporation on or about January 11, 1907, entered into an oral contract with him, whereby it was agreed that the respondent should have the same rights that had been given to the complainant, and that he should be paid by the corporation twenty-five cents *per capita* per day for each guest whom he should secure for the Inside Inn."

The defendant then wrote to all men named in the plaintiff's catalogue except those having places of business in Canada, " and two or three others who appeared to have an independent agency business," telling them that the plaintiff had not an exclusive agency for New England and suggesting to them that they could get paid on the same footing as that upon which the plaintiff and the defendant were to be paid, if they chose to act for themselves and not as sub-agents of the plaintiff. He also wrote to the New York, New Haven, and Hartford Railroad Company, calling attention to the fact that some of the local ticket agents of that railroad company were advertised by the plaintiff as having his tickets and tours on sale, and suggesting that the railroad company would prefer to have all its agents strictly neutral in dealing with tourist concerns.

With respect to these letters the master made this finding: " The purpose of the respondent in sending the letters above mentioned appears from the letters themselves. I do not find that the respondent was actuated by malice toward the complainant."

The master further found that " The Jamestown Hotel Corporation has never at any time rescinded, or attempted to rescind, its said contract with the complainant"; that " The complainant has never waived any of his rights under the contract, and has never consented to any modification or alteration thereof except with reference to the bond " which is not material; and further, that " The Inside Inn is the only hotel which is located, or, under the contract of the company with the exposition, can be located, within the exposition grounds. The exclusive right to act as agent for the Inside Inn within the New England territory is a valuable right."

Lastly he has found: " There is a strong probability that a large tourist business will be done between Boston and New

England and the Jamestown Exposition between April and the close of the exposition in November, and that many passengers will arrange for tours through various tourist agencies. In all probability many more passengers will buy tours and tickets from the complainant if he is the exclusive agent in New England for the Inside Inn than will be the case if other tourist agents also book guests or issue coupons or other devices which are accepted by the Hotel Corporation for accommodations. The damage which he will sustain if the respondent or other persons are allowed to act as agents or to book guests or issue coupons in this manner is incapable of accurate ascertainment. The loss to the complainant will not be merely the loss of the commission of twenty-five cents *per capita* per day, which would otherwise be received from the hotel, but it will be the loss of profits on tours which he might otherwise be able to arrange."

The result of the findings of the master must be taken to be that the defendant induced the Hotel Corporation to break its contract with the plaintiff, but that he did not do this to spite the plaintiff or for the purpose of injuring him, but for the purpose of getting for himself (the defendant) business which the plaintiff alone was entitled to under the contract with the Hotel Corporation, that is to say, to get business which the defendant could not get if the Hotel Corporation kept its agreement with the plaintiff.

Three defences have been set up by the defendant, namely: First, that he had a right to do what he did; second, that the plaintiff does not come into court with clean hands; and third, that the plaintiff has an adequate remedy at law by bringing an action for damages.

1. So far as the first defence is concerned, it is in effect that where A. is under a contract to serve the plaintiff for a specified time, the defendant, knowing that contract to be in existence, is justified in hiring A. away from the plaintiff before the expiration of that time, by giving him (A.) higher wages if he (the defendant) thinks that to be for his (the defendant's) pecuniary benefit. The ground on which the defendant bases this contention is that he has a right to compete with the plaintiff and that the right of competition is a justification for thus hiring away the plaintiff's servant.

We say that this is in effect the defence set up here because it has been settled in Massachusetts that there is no distinction between a defendant's enticing away the plaintiff's servant and a defendant's inducing a third person to break any other contract between him and the plaintiff. That was decided by this court in *Walker* v. *Cronin*, 107 Mass. 555 ; see p. 567. See also *Moran* v. *Dunphy*, 177 Mass. 485. In other words, this court there adopted the conclusion reached by the majority of the judges of the Queen's Bench in *Lumley* v. *Gye*, 2 El. & Bl. 216. This is also the settled law of the Supreme Court of the United States. *Angle* v. *Chicago, St. Paul, Minneapolis & Omaha Railway*, 151 U. S. 1. And it has been affirmed in England. *Bowen* v. *Hall*, 6 Q. B. D. 333. *Read* v. *Friendly Society of Operative Stonemasons*, [1902] 2 K. B. 88. *Glamorgan Coal Co.* v. *South Wales Miners' Federation*, [1903] 2 K. B. 545 ; *S. C.* on appeal, *sub nomine South Wales Miners' Federation* v. *Glamorgan Coal Co.* [1905] A. C. 239.

No case has been cited which holds that a right to compete justifies a defendant in intentionally inducing a third person to take away from the plaintiff his contractual rights.

Not only has no case been cited in which that has been held, but no case has been cited in which that contention has been put forward.

It happens, however, that Mr. Justice Wells in defining the rights of competition has denied the existence of such a justification. In discussing the first count in *Walker* v. *Cronin*, 107 Mass. 555, 564, he said : " Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition ; but he has a right to be free from malicious and wanton interference, disturbance or annoyance. If disturbance or loss come as a result of competition, or the exercise of like rights by others, it is *damnum absque injuria*, unless some superior right by contract or otherwise is interfered with." And it also happens that in *Read* v. *Friendly Society of Operative Stonemasons*, [1902] 2 K. B. 88, Darling, J., in discussing the rights of a labor union to induce the plaintiff's employers to break their contract of apprenticeship with him, denied it. He there said : " To resume, I think the plaintiff has a cause of action against the defendants,

unless the court is satisfied that, when they interfered with the contractual rights of plaintiff, the defendants had a sufficient justification for their interference — to use Lord Macnaghten's words. This sufficient justification they may have had, and they may prove it; but the facts found by the county court judge and relied on by him as enough do not amount to one ; for it is not a justification that ' they acted *bona fide* in the best interests of the society of masons,' i. e., in their own interests. Nor is it enough that ' they were not actuated by improper motives.' I think their sufficient justification for interference with plaintiff's right must be an equal or superior right in themselves, and that no one can legally excuse himself to a man, of whose contract he has procured the breach, on the ground that he acted on a wrong understanding of his own rights, or without malice, or *bona fide*, or in the best interests of himself, nor even that he acted as an altruist, seeking only the good of another and careless of his own advantage."

It is hard to see how this court could have decided *Garst* v. *Charles*, 187 Mass. 144, as it did were it the law that self interest is a justification for intentionally interfering with a plaintiff's contractual rights. The same is true of *Bowen* v. *Hall*, 6 Q. B. D. 333, if not of *Read* v. *Friendly Society of Operative Stonemasons*, [1902] 2 K. B. 88.

The argument here urged by the defendant comes from not distinguishing between two cases which not only are not the same but are altogether different so far as the question now under consideration is concerned.

If a defendant by an offer of higher wages induces a laborer who is not under contract to enter his (the defendant's) employ in place of the plaintiff's, the plaintiff is not injured in his legal rights. But it is a quite different thing if the laborer was under a contract with the plaintiff for a period which had not expired and the defendant, knowing that, intentionally induced the laborer to leave the plaintiff's employ by an offer of higher wages, to get his (the laborer's) services for his (the defendant's) benefit.

A plaintiff's right to carry on business, that is, to make contracts without interference, is an altogether different right from that of being protected from interference with his rights under

a contract already made. The existence of both rights and the difference between the two is recognized by Wells, J. in *Walker* v. *Cronin*, 107 Mass. 555; the first count in that case went on the first right, and the second and third counts on the second right. Again, the existence of the two is recognized and stated by Holmes, J. in *May* v. *Wood*, 172 Mass. 11, 14, 15.

Where the plaintiff comes into court to get protection from interference with his right of possible contracts, that is, of his right to pursue his business, acts of interference are justified when done by a defendant for the purpose of furthering his (the defendant's) interests as a competitor. It was this right that the plaintiff came into court to assert in *Carew* v. *Rutherford*, 106 Mass. 1, *Walker* v. *Cronin*, 107 Mass. 555 (so far as the first count was concerned), *Vegelahn* v. *Guntner*, 167 Mass. 92, *Plant* v. *Woods*, 176 Mass. 492, *Martell* v. *White*, 185 Mass. 255, *Berry* v. *Donovan*, 188 Mass. 353, and *Pickett* v. *Walsh*, 192 Mass. 572 (so far as the third prayer for relief was concerned) ; while the cases of *Walker* v. *Cronin*, 107 Mass. 555 (so far as the second and third counts were concerned), *May* v. *Wood*, 172 Mass. 11, *Garst* v. *Charles*, 187 Mass. 144, and *Pickett* v. *Walsh*, 192 Mass. 572 (so far as the second prayer for relief was concerned), are cases of the second class.

There are statements in opinions in Massachusetts and in England that a defendant is not liable for interference with a plaintiff's rights in both of these two classes of cases unless he acts maliciously within the meaning of malice as used in these opinions. In the case at bar there was no necessity of proving spite or ill will toward the plaintiff. This is not a case where there was an abuse of what, if done in good faith, would have been a justification, but a case where the defendant with knowledge of the contract between the plaintiff and the Hotel Corporation intentionally and without justification induced the Hotel Corporation to break it. That is proof of malice within the meaning of that word as used in these opinions. *South Wales Miners' Federation* v. *Glamorgan Coal Co.* [1905] A. C. 239.

We do not rest our decision in this case (as we have been urged to do by the plaintiff) on cases like *Peabody* v. *Norfolk*, 98 Mass. 452, *Lumley* v. *Wagner*, 1 DeG., M. & G. 604, *Stiff* v.

*Cassell,* 2 Jur. (N. S.) 348, *Donnell* v. *Bennett,* 22 Ch. D. 835, *Manchester Ship Canal Co.* v. *Manchester Racecourse Co.* [1901] 2 Ch. 37, *Manhattan Manuf. Co.* v. *New Jersey Stock Yard Co.* 8 C. E. Green, 161, *Western Union Telegraph Co.* v. *Rogers,* 15 Stew. (N. J.) 311, and *Baker* v. *Pottmeyer,* 75 Ind. 451. Those are cases where the plaintiff, having a contract which a court of equity would specifically enforce in whole or in part, brings a bill for specific performance against the other party to the contract, and as ancillary to a decree for specific performance against the other party to the contract asks that the third person who is about to contract or has contracted with him be also enjoined. The plaintiff made out his right to maintain this suit against the defendant alone by proving that he in fact induced the Hotel Corporation to break its contract with the plaintiff. In case of ordinary contracts (that is to say, contracts which will not be specifically enforced in equity), a plaintiff does not go far enough to render a defendant liable for unlawful interference with his contractual rights, when he proves that the defendant, in using the ordinary methods of promoting and increasing his own business, obtained business from the other party to the plaintiff's contract which that other party could not have given him without breaking his contract with the plaintiff, and that this was known to the defendant. To charge the defendant in such a case the plaintiff must prove that it was the act of the defendant which brought about the breach of the contract with the plaintiff.

Whether contracts which equity will specifically enforce stand on a different footing need not be considered.

2. The next defence is that the plaintiff does not come into court with clean hands. What the defendant relies on here is (1) the finding of the master as to the defendant's interview with the Hotel Corporation on January 11 of this year: "In talking with the officers of the corporation, he represented to the corporation and its officers that the complainant's statements in his catalogue with reference to the persons who had for sale his tickets and tours were false, and that the complainant's business was insignificant, and that he had been until recently a ticket scalper and that it was a mistake for the corporation to give an exclusive agency in New England to any one man, and

that more business would be brought to the company if all agents were given equal terms. . . . There was no evidence offered to show that the statements made by Mr. Marsters were false." The defendant relies also (2) on this further finding of the master: "At the time the contract above referred to was made, the complainant had put in the hands of the officers of the Jamestown Hotel Corporation a copy of the summer edition of his catalogue called ' Big and Little Journeys,' which contained a list of persons at whose offices his tickets and tours were said to be on sale, but no other statement was made by him with reference to said persons. His tickets and tours were not on sale at these offices." Again (3) the defendant relies on the fact that the cut in the plaintiff's catalogue of the exterior of the building 293 Washington Street represented that more of that building was taken up with his offices than was the fact; and lastly (4), that only one of the personally conducted tours advertised in that catalogue to take place did in fact take place.

It is found by the master that: " He [the plaintiff] is an agent of the Boston and Maine Railroad, and as such sells their tickets, and is a special tourist agent for the Boston and Maine Railroad. He is also an agent of various other roads and steamship lines, and tourist agent for still other roads and steamship lines. His business consists largely in the arranging of tours for individuals and parties, sometimes personally conducted, throughout the United States, Canada, and Mexico, and in providing through transportation and hotel accommodations for such parties or individuals." It is stated in the master's report that the plaintiff testified that his business amounted to $200,000 a year. Again, it is found by the master as a fact that the plaintiff receives business from all parts of New England, and that " The complainant for about two years has had arrangements with various persons throughout the New England States whereby they, for a certain commission, will take orders for his tickets and tours from customers applying for them, and forward such orders to the complainant. The Boston and Maine agents are specially authorized by the Boston and Maine Railroad to thus co-operate with the complainant, and a large business is done by the complainant through these persons."

The ordinary rule is that it is only with regard to the plain-

tiff's rights against the defendant that the plaintiff must come into court with clean hands. *American Association* v. *Innis*, 109 Ky. 595. *Dering* v. *Winchelsea*, 1 Cox, 318. *Kinner* v. *Lake Shore & Michigan Southern Railway*, 69 Ohio St. 339. *Meyer* v. *Yesser*, 32 Ind. 294. *Lewis & Nelson's appeal*, 67 Penn. St. 153, 166.

If we assume in favor of the defendant (without making a decision on the point) that the plaintiff could not have maintained a bill for interference with his contractual rights if the contract in question had been procured by his fraud, the defendant has not made out a defence on that ground.

Taken as a whole, the legal significance of all the matters relied on by the defendant in this connection is that the plaintiff's contract with the Hotel Corporation was procured by fraud and that all the defendant has done is to tell that corporation the truth.

The answer to this is first, that the master has not found fraud; second, that the Hotel Corporation has not elected to rescind its contract with the plaintiff for fraud or for any other reason; and lastly, that the defendant did not confine himself to telling the corporation the truth about false representations of the plaintiff by which he procured the making of the contract, but went further and urged as an argument for inducing the corporation to break its contract with the plaintiff that it was a mistake to appoint an exclusive agent at all, that they could make more money if their agency was not exclusive, no matter who the agent was.

3. The finding of the master as to the damages which the plaintiff is likely to suffer shows that an action at law would not give him an adequate remedy. Where the plaintiff proves that the defendant unlawfully interferes or threatens to interfere with his business or his rights under a contract, and further makes out in proof that damages will not afford an adequate remedy, equity will issue an injunction. The issuing of injunctions in *Vegelahn* v. *Guntner*, 167 Mass. 92, and similar cases, the last of which is *Pickett* v. *Walsh*, 192 Mass. 572, are decisions directly in point. As to which see *Sherry* v. *Perkins*, 147 Mass. 212.

The terms of the injunction should be in substance that the

defendant be restrained from directly or indirectly acting as agent of the Hotel Corporation within the New England States, and from preventing or seeking to prevent, directly or indirectly, the plaintiff from acting as exclusive agent of the Hotel Corporation for that territory.

*So ordered.*

*G. R. Nutter*, (*H. F. Lyman* with him,) for the plaintiff.
*C. W. Rowley*, for the defendant.