·MORRIS B. ANDERSON vs. MAX MOSKOVITZ & another.

Suffolk.    March 24, 1927. — July 1, 1927.

Present: RUGG, C.J., PIERCE, CARROLL, & SANDERSON, JJ.

*Unlawful Interference. Equity Jurisdiction,* To enjoin unlawful inter-
ference. *Damages,* In suit in equity.

A suit in equity to enjoin a defendant from unlawfully interfering with a
contract of employment by the plaintiff of a third person may be main-
tained if it appears that the defendant with knowledge of the contract
intentionally and without justification induced the prospective em-
ployee to break it.
The defendant cannot defeat a suit of the character above described by
showing that his conduct was due to his having misinterpreted the
contract of the plaintiff with the prospective employee.
In a suit of the character above described, it appeared that the employee
was under contract to the plaintiff to begin work one week after being
called by the plaintiff and not later than January 1, and was so to
organize, supervise and manage a shop, to be equipped by the plaintiff,
that the cost of production of specified articles to be manufactured
would not exceed amounts therein stated.   By reason of interference
by the defendant, the employee did not begin work for the plaintiff
until February 9, and between January 1 and February 9 the plaintiff's
factory, equipped for use, was idle.   The plaintiff had some of the
articles manufactured by others.   A master assessed as damages rent
of the vacant shop from January 1 to February 9, interest for the same
period on the plaintiff's investment in equipment which remained idle,
cost of manufacturing goods by outside contractors to fill orders in ex-
cess of the cost stipulated in the plaintiff's contract, and losses from
cancellation of contracts because goods were not delivered on time. .
No recovery was allowed for loss of profits.   *Held,* that
    (1) The question was not presented whether, if such profits had been
allowed, rent of the building and interest on the cost of machinery should
be deducted in determining profits;
    (2) The assessment of damages was proper.

BILL IN EQUITY, filed in the Supreme Judicial Court for
the county of Suffolk on January 11, 1926, to enjoin the de-
fendant Max Moskovitz from breaking a contract of em-
ployment with the plaintiff and the defendant Trimount
Clothing Company "from doing any act and thing to induce
him to break" that contract, and for damages.

The suit was referred to a master.   Material facts found

by the master are stated in the opinion. After the filing of the master's report, the suit by agreement of the parties was dismissed as to the defendant Moskovitz. It then was heard by *Wait*, J., upon the pleadings and the master's report, and by his order there were entered an interlocutory decree confirming the report and a final decree ordering the defendant company to pay to the plaintiff $1,212.22 and interest and costs. The company appealed.

The case was submitted on briefs.

*S. Sigilman*, for the defendant Trimount Clothing Company.

*E. A. Whitman*, for the plaintiff.

SANDERSON, J. This is a bill in equity brought against one Moskovitz and the Trimount Clothing Company, a corporation, hereinafter called the company, for an injunction to prevent the company from inducing Moskovitz to break his contract of employment with the plaintiff and for the assessment of damages.

On September 24, 1925, the plaintiff, a maker of coats, entered into a written contract with Moskovitz, then in the employ of the company, to install a special system for making pants and vests, and to supervise their manufacture. Moskovitz sought out the plaintiff and asked for this employment. By the written contract, Moskovitz was to begin work one week after being called by the plaintiff and not later than January 1, 1926, and was so to organize, supervise and manage a shop, to be equipped by the plaintiff, that the cost of production of pants and vests would not exceed the amounts therein stated. We interpret the contract to mean that the term of service of Moskovitz would begin January 1, 1926, but that he might be called to work earlier upon a week's notice. There was evidence that it was difficult, if not impossible, for the plaintiff to hire a competent man to handle Moskovitz's special line of work. The plaintiff, after making the contract, proceeded to hire and fit up premises for the new manufacturing business.

On December 13, 1925, Moskovitz handed his resignation to the company and two days later he said to its president that notwithstanding his resignation he would continue to

work for the company until January first.  On or about December 28, 1925, the company's president, who had seen the contract between Moskovitz and the plaintiff and had consulted a lawyer about its meaning, caused a contract of employment with the company to be drawn with terms more favorable to Moskovitz than those contained in the plaintiff's contract, and presented it to Moskovitz for signature. Moskovitz suggested certain changes in it.  Two days later the company's clerk told him that the changes would be made; but the contract was not executed until January 11, 1926.

The plaintiff's new shop was ready for operation on or before Saturday, January 2, the first working day in that month, but Moskovitz did not appear.  On that day the plaintiff wrote him to report for duty at once, but he did not come and asserted that he had not been called to work according to the contract.   The plaintiff and Moskovitz on January 8, 1926, agreed to modify their contract by increasing the compensation to be paid Moskovitz.  By letter, sent January 9, and received January 11, the plaintiff's attorneys notified the company that Moskovitz was to report for duty under the plaintiff's contract January 11, stating that any attempt to induce him to break it or leave the plaintiff's employment would be followed by legal action.  Moskovitz continued to work for the company until the issuance of an injunction in the case.  He began work for the plaintiff February 9, 1926, and left that employment on March 27, 1926, each of them then waiving all claims against the other. The factory and machinery remained idle until February 9. Between January 2 and February 9, the plaintiff had some pants and vests made by outside manufacturers to meet imperative needs.

The case was referred to a master who assessed damages in the sum of $1,212.22, which included rent of the vacant shop from January 1 to February 9, 1926, interest for the same period on the plaintiff's investment in equipment which remained idle, cost of manufacturing goods by outside contractors to fill orders in excess of the cost stipulated in the plaintiff's contract, and losses from cancellation of contracts

because goods were not delivered on time. By agreement the bill was dismissed as to the defendant Moskovitz. The defendant saved no exceptions to the master's report. The court entered a decree for recovery by the plaintiff against the company in the amount found to be due by the master with interest and costs. The company appealed from this decree and its only contentions are (1) that upon the findings of the master the company committed no tortious act for which it is liable in damages; and (2) that, if it is liable, still the plaintiff is not entitled to recover for any of the items for which the damages were assessed.

"It is well settled that it is actionable to maliciously induce another to break his contract with the plaintiff. The gist of the action is maliciously or without justifiable cause inducing another to break his contract with the plaintiff and the means by which it is done are immaterial." *Wheeler-Stenzel Co.* v. *American Window Glass Co.* 202 Mass. 471, 473. *Walker* v. *Cronin,* 107 Mass. 555. *Moran* v. *Dunphy,* 177 Mass. 485, 487. *Beekman* v. *Marsters,* 195 Mass. 205. *McGurk* v. *Cronenwett,* 199 Mass. 457.

The question, whether the company unlawfully induced Moskovitz not to go to work under his contract with the plaintiff, was one of fact and we cannot say that the conclusion reached was wrong. *Beekman* v. *Marsters, supra,* page 213. Malice is proved if it appears that the defendant with knowledge of the contract intentionally and without justification induced one of the contracting parties to break it. *McGurk* v. *Cronenwett, supra,* page 462. It is no defence for a party to say that he misinterpreted the meaning of the contract. "An intentional interference . . . [with the right of a party to the benefit of his contract] without lawful justification, is malicious in law, even if it is from good motives and without express malice." *Berry* v. *Donovan,* 188 Mass. 353, 356. It was said in *Beekman* v. *Marsters, supra,* at page 211, quoting from an English case: "no one can legally excuse himself to a man, of whose contract he has procured the breach, on the ground that he acted on a wrong understanding of his own rights, or without malice, or *bona fide,* or in the best interests of himself." The

damages are assessed, not for a breach of the contract but for the direct and proximate results of the wrongful act. *Walker* v. *Cronin*, 107 Mass. 555, 565. *Gould* v. *Kramer*, 253 Mass. 433.

The plaintiff is not recovering for loss of profits which would have accrued to him between January 2 and February 9, from the manufacturing which might have been done during that period in the shop. The master found that this claim of damage was founded on conjecture and disallowed it. The question is not presented whether, if such profits had been allowed, rent of the building and interest on the cost of machinery should be deducted in determining profits. The damages assessed for expenses and losses could have been found to be the direct result of the refusal of Moskovitz to go on with the contract and we are unable to say that they were not properly assessed.

*Decree affirmed with costs.*