KATHERINE CONRAD, Appellant, *v.* ALBERT A. SCHMITZ et al., Respondents, Impleaded with Others.

(Argued June 1, 1936; decided July 8, 1936.)

*John W. Ryan* for appellant.

*Manly E. King* for respondents.

Judgment affirmed, with costs; no opinion.

Concur: LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ. FINCH, J., dissents in the following opinion in which CRANE, Ch. J., concurs:

FINCH, J. (dissenting) This case presents a most interesting question. It is submitted that the courts should seek to make the law adaptable to the needs of the community in so far as consistently they are able without unsettling principles of property or of conduct.

In this case we do not unsettle any rule of property or conduct in holding that the defendant has profited illegally through interference with the rights of the plaintiff. On the contrary, we reaffirm what this court has said, namely, that: " The great weight of authority in this country and in England is to the effect that if A has a legal contract with B, either for the rendition of service or any other purpose, and C, having knowledge of the existence thereof, intentionally and knowingly and without reasonable justification or excuse induces B to break the contract, by reason of which A sustains damage, an action will lie by A against C to recover the same." (*Campbell* v. *Gates*, 236 N. Y. 457, 460.) The tenant acquired what he possessed from the plaintiff. This acquisition, however, was subject to a condition by way of agreement made with the plaintiff which qualified that which the tenant possessed, namely, the tenant agreed that he would not, through transfer of title, strip the farm of the feed necessary for the stock through the winter. The defendant milling company was a creditor but before it became a creditor, it had notice at all times of this qualified ownership of the tenant in the crops. When the milling company, with knowledge of this qualified ownership, permitted the tenant to give to it these crops in payment of its debt, thus depriving the cattle of their feed, it cannot be said that this defendant did not profit through interference with the agreement which the plaintiff had with the tenant concerning these crops. As the milling company had advanced its money without reliance upon the ownership of these crops, it could not have any claim as against the rights of this plaintiff in those crops. It is said that whether there is justification sufficient to warrant the courts in protecting the rights of the plaintiff rests upon the individual opinion of the judges as to what constitutes " just cause, sufficient justification or legal justification." (Cf. Anson on Law of Contract [Corbin, 5th Am. ed.], p. 351.) I am unwilling to say that a debtor may apply on his debt the crops in violation of the agreement which the owner had with

the tenant to the knowledge of the debtor. It is said that the tort of interference with the performance of a contract (*Hornstein* v. *Podwitz*, 254 N. Y. 443; *Campbell* v. *Gates*, 236 N. Y. 457; *Lamb* v. *Cheney & Son*, 227 N. Y. 418) has never been extended to a contract relating to fungible goods. But why not? Is there not as much injustice caused by interference with the contract in the case at bar which stripped the farm of all feed for the stock for the winter as by a similar interference with an agreement to pay a real estate broker a commission for the sale of property? (*Hornstein* v. *Podwitz*, *supra.*)

It is said that the milling company might have reduced its claim to judgment and then had execution against these crops in violation of the rights of the plaintiff. This would not follow if so to do would be an unjustifiable interference by the milling company with the contractual rights of the plaintiff of which they had notice, for then the courts would restrain the milling company from using the execution in violation of the rights of the plaintiff. The illegality of the act of the milling company is not based upon malice, but the gist of the action is a violation of legal right committed knowingly as was pointed out by Lord MACNAGTHEN in *Quinn* v. *Leathem* ([1901] A. C. 495). Unless the courts do sustain this right of the plaintiff then we make it impossible for the owner of a farm to lease it upon such terms as will protect the owner. If on the other hand we do permit the law to take cognizance and enforce the rights which the parties have created then we permit farm lands to be more widely used since legal sanctions are given so that the rights of the parties in the agreements made by them will be protected.

The damage to the plaintiff was the value of the winter feed of which the farm was stripped. Whatever measure is employed this item is at least recoverable. (Cf. *Hewitt* v. *Ontario Copper Lightning Rod Co.*, 44 U. C. Rep. 287; *Anderson* v. *Moskowitz*, 260 Mass. 523.) Then the owner of the farm had no other recourse than to cancel the lease. There was no certainty that fresh feed pur-

chased by the plaintiff for the cattle and intrusted to the tenant would not have followed the same course as the feed which he had expressly agreed with the plaintiff not to sell.

For these reasons I think that the court at Special Term was right and that the judgment of the Appellate Division should be reversed and the judgment of the Supreme Court in favor of the plaintiff affirmed.

Judgment affirmed.