Fremont-Smith, Thayer, J.
Plaintiffs IDT Telecom, Inc. (“IDT’) sells personal identification numbers for prepaid calling cards and provides telecommunication services relating to those cards. Plaintiff Union Telecard Alliance, LLC (“UTA”) distributes IDT cards to sub-distributors, who distribute the cards to retail locations in Massachusetts and elsewhere. Defendants are competitors of plaintiffs in the business of creating, distributing and selling prepaid calling cards.
Plaintiffs allege that defendants have and continue to deceptively advertise their prepaid cards by falsely representing that the cards will deliver an inflated amount of minutes to consumers. This, they argue, has damaged them in the form of lost market share and profits because customers and distributors have diverted their business from plaintiffs in reliance on defendants’ deceptive advertising, in violation of c. 93A, §§2 and 11. Plaintiff UTA further claims that defendants have tortiously interfered with their contractual relations with various sub-distributors by inducing such sub-distributors to purchase prepaid calling cards from them rather than from UTA.
Defendants now move for summary judgment on both counts, arguing, inter alia, that plaintiffs cannot establish a sufficient causal nexus between any unfair or deceptive conduct and any alleged damages, and that any damages are, in any event, incapable of reasonable calculation and are barred by the “economic loss doctrine.”
It is clear that a purported loss of “market share” in and of itself is an intangible not compensable under G.L.c. 93A, § 11, as c. 93A only allows recovery for “loss of money or property.” Property means “the kind of property that is purchased or leased, not such intangibles as a right to a sense of security, to peace of mind, or to personal liberty.” Baldassari v. Public Finance Trust, 369 Mass. 33, 45 (1975).[1] Lost profits, moreover, are recoverable only if proven to a degree of reasonable certainly. See e.g., RGJ Associates, Inc. v. Stainsafe, Inc., 338 F.Sup.2d 215, 237 (D.Mass. 2004).
Accordingly, to recover under c. 93A, plaintiff must establish that: (1) the defendant’s wrongful conduct is the proximate cause of its injury; (2) plaintiffs have suffered tangible loss in the form of money or property; (3) such damages are not based on speculation but are calculable to a reasonable degree of certainty; and (4) such damages are not precluded by the “pure economic loss” doctrine discussed in Canal Electric Co. v. Westinghouse Elec. Corp., 756 F.Sup. 620, 630 (D.Mass. 1990). Plaintiffs can also obtain injunctive relief if they can prove that defendants’ unfair practices “may have the effect of causing [a] loss of money.” See G.L.c. 93A, §11.
With respect to defendants’ primary argument, that the causal relationship between any alleged consumer deception and plaintiffs’ loss of profits is too tenuous for c. 93A liability, the problem is well stated in McCarthy on Trademark and Unfair Competition at §27:41, 27
How can one seller out of many who are selling the bona fide product prove that a certain customer of the falsely advertising defendant would have bought from the plaintiff but for the false advertising? If the plaintiff is merely one of many sellers vending the “real McCoy,” it is practically impossible for him to plead or prove that “but for” the false advertising, defendant’s customers would have bought from the plaintiff. That is, if there are numerous sources in an open market, it will be impossible to ascertain whether consumers would have *664 dealt with a particular seller but for the defendant’s deceptive advertising. Thus, even though there is false advertising which is illegal, the court may say that this plaintiff has no standing to sue to prevent it even though a defrauded consumer would have standing.
This problem of proof may be overcome where the defendant is the only competitor in a two-firm market. See Electronics Corp. of America v. Honeywell, Inc., 428 F.2d 191, 196 (1st Cir. 1970). There, the Court of Appeals reversed the District Court’s denial of a preliminary injunction against unfair competition where the defendant-competitor, which made replacement parts for plaintiffs electronic safeiy-control systems, used a brochure to solicit customers which was deceptive as to the ease of installation of its replacement parts and as to the price comparison with plaintiffs replacement parts. Id. at 194-96. The Courtfound that in these circumstances, where plaintiffs lost customers “had nowhere else to turn,” a likelihood of damages had been shown so as to justify a preliminary injunction. Id. at 196.
Similarly, in Ricky Smith Pontiac, Inc. v. Subaru, Inc., 14 Mass.App.Ct. 396, 424 (1982), the Appeals Court suggested that a causal link between unfair competition and damages is inferable under circumstances where the plaintiff, a franchised car dealer, sued a regional distributor who had unlawfully franchised a competing dealership in violation of c. 93B, §4(3) (1), and was permitted to recoup the net profits it would have received if “it had not been wrongfully deprived by the defendant of the opportunity to sell more vehicles in its relevant market area.” Id. at 426. The Court concluded that “[cjommon sense suggests that the placement of a competing automobile dealership within the market area of an existing dealer should normally have some direct negative economic impact on the existing dealer in terms of lost sales and diminished profits.” Id. at 424.
Here, however, where there are other competitors in the market, it cannot confidently be inferred that any customers procured by defendant’s false advertising were at plaintiffs’ expense. See Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1388-89 (5th Cir. 1995) (chronology of loss of business of specific bottlers was not sufficient evidence for jury to conclude that defendant’s false representations were a substantial factor in the decision for bottlers to switch brands); Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 209 (1989) (reversing verdict where no direct evidence of lost sales from defendant’s unfair competitor); R.S.A. Media, Inc. v. AK Media Group, Inc., 260 F.3d 10, 16 (1st Cir. 2001) (where the court affirmed the grant of summary judgment to the defendant because the evidence was insufficient to establish that defendant’s unfair competition, rather than the existence of exclusionary state regulations regarding billboards, was a proximate cause of plaintiffs damages).
For the plaintiffs to prevail here, then, they must elicit direct evidence, in addition to their loss of market share or revenues, to establish that defendant’s wrongful acts proximately caused plaintiffs’ loss of sales and profits.[2]
Next, the defendant claims that there was and is an insufficient nexus between defendants and the plaintiffs for c. 93A liability because the parties are not engaged in “trade or business. ” Cash Energy v. Weiner, 768 F.Sup. 892, 894 (D.Mass. 1991) (the court dismissed the plaintiffs’ c. 93A claim where plaintiffs land was contaminated by migration of contaminants from defendant’s land but where the parties’ only business connection was that they owned adjacent properties). The Court found there was no sufficient business nexus between the parties to give rise to c. 93A liability. Id. at 893-94. See also Nei v. Boston Survey Consultants, Inc., 388 Mass. 320, 324-25 (1983) (although no contractual privity is required to sustain a c. 93A claim, plaintiff could not maintain a c. 93A action against a surveyor of land who had been hired by seller to survey the land plaintiff had purchased).
However, courts have also indicated that a competitive relationship between the parties qualifies as a “sufficient business relationship” under c. 93A where unfair competition is alleged. See Cash Energy v. Weiner, supra at 894 (a competitive relationship qualifies as a “business relationship"), Ciardi v. F. Hoffman La Roushe, Ltd., 436 Mass. 53, 58 (2002) (pointing out that the language of G.L.c. 93A, §1, purports to regulate trade and commerce “directly or indirectly affecting the people of this commonwealth” and holding that the plaintiffs, who were indirect purchasers of price-fixed products, had standing to recover under the statute).
Defendants further contend that, because c. 93A sounds in tort, plaintiffs should be barred by the “economic loss doctrine,” which prohibits recovery in a negligence case where no personal injury or damage to plaintiffs property is allowed, but where plaintiff claims only a loss of money from consequential economic harm.
However, in Canal Electric Company v. Westinghouse Electric Co., 973 F.2d 988 (1st Cir. 1992), the court, while agreeing that the economic loss doctrine does apply to a c. 93A case, pointed out that the doctrine is inapplicable where, as here:
the defendant engages in an intentional tort, Beekman v. Marsters, 195 Mass. 205, 80 N.E. 817 (Mass. 1907), ... or where the defendant publishes false and disparaging statements. System Operations, Inc. v. Scientific Games Dev. Corp., 555 F.2d 1131 (3d Cir. 1977).
It is thus clear that loss of money or of other economic type loss is recoverable under c. 93A in these circumstances.
*665 Finally, defendants point out that plaintiffs have the burden of proving lost sales and profits to a reasonable degree of certainty. See Augat v. Aegis, Inc., 417 Mass. 484, 488 (1994) quoting BBF, Inc. v. Germanium Pwr. Devices Corp., 13 Mass.App.Ct. 166, 176-77 (1982) (“It was not sufficient simply to show [plaintiffs] projection of its sales and the historic return of total sales . . . plaintiff must establish that harm ‘had a reasonably ascertained monetary value’ ”). See: Laurie v. Castle, 225 Mass. 37, 51-52 (1916) (while the lost profits claimed “need not be susceptible of calculation with mathematical exactness,” they cannot be recovered where they are “remote, speculative, or hypothetical, and not within the realm of reasonable certainty.” Id.).[3]

PRELIMINARY ORDER

Based on the above, the Court rules that the “economic loss doctrine” does not bar plaintiffs’ claims, and that the parties are “engaged in trade or business” for purposes of c. 93A.
With respect to the remaining issue of proximate causation of damages, defendants assert they need no more discovery and that the motion is “ripe” for decision (see either Reply in Support of Defendants’ Motion, p. 7), but assert that plaintiffs do need an opportunity to obtain additional discovery as to the causal connection (if any) between plaintiffs’ alleged loss of business and defendants’ alleged unfair competition.
Accordingly, with respect to the issue of whether defendant’s alleged wrongful conduct proximately caused the plaintiffs’ alleged damages, the Court defers a final ruling on defendants’ motion until this Court’s “Order With Respect to Additional Discovery,” dated February 26, 2008, has been implemented.

Baldassari has been overruled to the extent that the legislature has expanded the type of damages recoverable under G.L.c. 93A, §9, but proof of a loss of money or property is still required to prevail in a Section 11 claim. See, e.g., Halper v. Demeter, 34 Mass.App.Ct. 299, 304 n.9 (1993); Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 56 (1st Cir. 1998).

testimony by lost customers or by sub-distributors as to the “state of mind,” or reasons which prospective purchasers gave, when declining to purchase plaintiffs’ products, have been held to be admissible to prove the reason why customers declined to do so. See, e.g., Stelwagon Manufacturing Co. v. Tarmac Roofing Systems, Inc., 63 F.3d 1267 (3rd Cir. 1995) at 1273-75, and cases there cited.

Somewhat inconsistently, however, the court went on to conclude that defendants would not be permitted to escape liability: “On the other hand, although proof of the precise amount of loss is impossible, the defendants should not be permitted to escape the consequences of their wrongful conduct that caused harm to the plaintiffs if some reasonable damages calculations can be made . . . Since the plaintiffs have been unable to point to a particular customer or sale that was lost, the defendants must "accept a generalized determination of damages." Id. at 491. To do this, the Court analyzed plaintiffs loss in sales which it discounted by lost sales caused by other factors which the court considered to be unrelated to the defendants’ misconduct. Id. at 492-93.